## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

AGHI005618



# AMERICAN INTERNATIONAL
# SPECIALTY LINES INSURANCE COMPANY

A Member Company of American International Group, Inc.

A Capital Stock Insurance Company

175 Water Street

New York, NY 10038

**NOTICE: THIS INSURANCE COMPANY IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION**

---

## AIG netAdvantage Security ℠
### INTERNET & NETWORK SECURITY INSURANCE

**NOTICE: THIS POLICY CONTAINS SEVERAL COVERAGE PARTS. CERTAIN LIABILITY COVERAGE PARTS OF THIS POLICY ARE LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. DEFENSE EXPENSE UNDER THE LIABILITY COVERAGE PARTS OF THIS POLICY SHALL REDUCE THE APPLICABLE LIMIT OF LIABILITY AND ARE ALSO SUBJECT TO THE RETENTION SET FORTH IN THE DECLARATIONS. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE PROVIDED BY THIS POLICY WITH YOUR INSURANCE AGENT OR BROKER.**

**Prior Policy Number:** *491-50-34*          **Policy Number:** *672-91-00*

## DECLARATIONS

**ITEM 1.** **NAMED INSURED:** *ALTICOR GLOBAL HOLDINGS, INC*

        **ADDRESS:** *7575 EAST FULTON STREET*
                    *ADA, MI 49355*

**ITEM 2.** **POLICY PERIOD:** FROM *July 1, 2006* TO *July 1, 2007*
                          (12:01 A.M. standard time at the address of the **named insured**)

**ITEM 3.** **LIMITS OF LIABILITY:** (including **claim expenses**):

    A.    AGGREGATE LIMIT OF LIABILITY
           (aggregate for all coverages combined)    *$25,000,000*

    B.    SUBLIMITS OF LIABILITY:

| COVERAGE | COLUMN (1): sublimit of liability per wrongful act or failure of security, extortion claim, or crisis event | COLUMN (2): aggregate sublimit of liability per coverage |
|---|---|---|
| A. Internet Media Liability Coverage | *$25,000,000* each **wrongful act** or series of continuous, repeated or related **wrongful acts** | *$25,000,000* |
| B. Security Liability Coverage | *$25,000,000* each **wrongful act** or series of continuous, repeated or related **wrongful acts** | *$25,000,000* |
| C. Cyber-Extortion Coverage | *$25,000,000* each **extortion claim** or series of continuous, repeated or related **claims** | *$25,000,000* |

*7144331*

78087 (3/03)   *COPY*              1

AGHI005619

| COVERAGE | COLUMN (1): sublimit of liability per wrongful act or failure of security, extortion claim, or crisis event | COLUMN (2): aggregate sublimit of liability per coverage |
|---|---|---|
| D. Information Asset Coverage | **$25,000,000** each **failure of security** or series of continuous, repeated or related **failures of security** | **$25,000,000** |
| E. Business Interruption Coverage | **$25,000,000** each **failure of security** or series of continuous, repeated or related **failures of security,** subject to an hourly sublimit of ten percent (10%) of such amount (including **dependent business interruption loss** and related **extra expense,** and **forensic expenses,** subject to the limits in set forth in Clause V.) | **$25,000,000** |
| F. Criminal Reward Fund Coverage | $50,000 each **criminal reward fund,** at **our** sole and absolute discretion | $50,000 |
| G. Crisis Expense Coverage | $50,000 per **crisis event,** subject to 20% co-insurance by **you** | $50,000 |

**ITEM 4.** **RETENTIONS:**

| COVERAGE | Per claim, failure of security extortion claim |
|---|---|
| A. Media Liability Coverage | **$500,000** each **claim** |
| B. Security Liability Coverage | **$500,000** each **claim** |
| C. Cyber– Extortion Coverage | **$500,000** each **extortion claim** |
| D. Information Asset Coverage | **$500,000** each **failure of security,** |
| E. Business Interruption Coverage | The greater of: **$500,000** ; or the dollar amount of **business interruption loss** during the **12** hour **waiting hours period** |
| F. Criminal Reward Fund Coverage | Not applicable |
| G. Crisis Expense Coverage | Not applicable (subject to 20% co-insurance by **you**) |

**ITEM 5.** **RETROACTIVE DATE:**

| COVERAGE | Retroactive Date |
|---|---|
| Coverage A – Internet Media Liability Coverage | N/A |
| Coverage B – Network Security Liability Coverage | *August 31, 1999* |

**ITEM 6.** **PREMIUM:** *$750,078*

*7144331*

78087 (3/03) *COPY*

2

AGHI005620

ITEM 7.    **NAME AND ADDRESS OF INSURER:**
         (This policy is issued only by the insurance company indicated below)

*American International Specialty Lines Insurance Company*
*175 Water Street*
*New York, NY 10038*

PRODUCER:                         PRODUCER LICENSE NO.: *On File with Carrier*
   *AON RISK SERVICES, INC. OF MI*
ADDRESS:
   *171 MONROE AVE NW.,STE 525*
   *GRAND RAPIDS, MI 49503*

**IN WITNESS WHEREOF,** the **insurer** has caused this policy to be signed on the Declarations by its President, a Secretary and a duly authorized representative of the **insurer** or countersigned in states where applicable.

                        SECRETARY                             PRESIDENT

                            AUTHORIZED REPRESENTATIVE
                 Or Countersignature (In states where applicable)

         COUNTERSIGNATURE & DATE                  COUNTERSIGNED AT

*7144331*

78087 (3/03)    **COPY**                3

AGHI005621

## AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY
# AIG netAdvantage Security℠
### INTERNET & NETWORK SECURITY INSURANCE

In consideration of the premium charged, and in reliance upon the statements in the application(s) attached hereto and made a part hereof, and subject to the **policy limit of liability** and applicable **sublimits of liability** set forth in the Declarations, and the terms and conditions contained herein, the insurance company designated in Item 7 of the Declarations, (hereinafter called **insurer, we, us,** or **our**) agrees as follows:

## I.   INSURING AGREEMENT

### A.  Internet Media Liability Coverage

We shall pay on **your** behalf those amounts, in excess of the applicable **Retention, you** are legally obligated to pay, including liability **assumed under contract,** as **damages,** resulting from any **claim(s)** made against **you** for **your wrongful act(s)** in the display of **Internet media.** Such **wrongful act(s)** must occur during the **policy period.**

### B.  Security Liability Coverage

We shall pay on **your** behalf those amounts, in excess of the applicable **Retention, you** are legally obligated to pay, as **damages,** resulting from any **claim(s)** first made against **you** and reported to **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for **your wrongful act(s).** Such **wrongful act(s)** must occur on or after the **Retroactive Date.**

### C.  Cyber–Extortion Coverage

We shall indemnify **you** for those amounts, in excess of the applicable **Retention, you** pay as **extortion monies** resulting from an **extortion claim** first made against **you** and reported to **us** in writing during the **policy period.**

### D.  Information Asset Coverage

We shall pay **you** the actual **information asset loss,** in excess of the applicable **Retention,** which you sustain, resulting directly from **injury** to **information assets** first occurring during the **policy period.**  Such **information asset loss** must first occur during the **policy period**  and result from a **failure of security** of **your computer system** that also first occurs during the **policy period.**

### E.  Business Interruption Coverage

We shall pay **you** the actual   **business interruption loss,** in excess of the applicable **Retention,** which **you** sustain during the **period of recovery** (or the **extended interruption period** if applicable), resulting directly from a   **material interruption.**  The **failure of security** causing the **material interruption** and the **business interruption loss** must each first occur during the **policy period.**

### F.  Criminal Reward Fund Coverage

We may pay on **your** behalf, at **our** sole and absolute discretion, up to fifty thousand dollars ($50,000), in the aggregate, as a **criminal reward fund.**  No **Retention** shall apply to this coverage.

### G.  Crisis Management Coverage

We shall pay on **your** behalf **crisis expenses** of up to fifty thousand dollars ($50,000), in the aggregate, in connection with any **crisis event** first occurring during the **policy period.** No **Retention** shall apply to this coverage.

## II.  DEFENSE COSTS, CHARGES AND EXPENSES

### A.  We have the right and duty to defend a **suit** brought against **you** for covered **wrongful acts,** even if the **suit** is groundless or fraudulent and, with **your** written consent, settle any **suit** if **we** believe that it is proper.

### B.  We have the right, but not the duty, to investigate any   **claim** and, with **your** written consent, settle any **claim** if **we** believe that it is proper.

AGHI005622

**C.** We shall pay **claim expenses you** incur with **our** prior written consent in the defense of a **suit** for covered **wrongful acts**. In addition, we may, but are not obligated to, pay **claim expenses** with respect to a **claim** that is not a **suit**. **Claim expenses** are part of and subject to the **policy limit of liability** and applicable **sublimits of liability**.

**D.** **You** may settle any **claim** or **suit** to which this insurance applies provided that **you** do so (1) on behalf of all **insureds**, and (2) without incurring **loss** in excess of all applicable **Retentions**.

**E.** **Our** duty to defend ends after the **policy limit of liability** or applicable **sublimits of liability** have been exhausted by payment of **loss**, including **claim expenses**. In addition, **our** duty to defend ends if **you** refuse to consent to a settlement of a **claim** that we recommend and that the claimant will accept, or if **you** violate any of the conditions set forth in paragraph VII.C. **You** must then defend, investigate or settle the **claim** at **your** own expense. As a consequence of **your** refusal or violation, **our** liability for **loss** shall not exceed the amount for which **we** could have settled such **claim** had **you** consented or cooperated, plus **claim expenses** incurred prior to the date of such refusal or violation. Provided however, this clause shall not apply to any settlement where the total incurred **loss** does not exceed all applicable **Retentions**.

## III. DEFINITIONS

**A.** **Act(s) of terrorism** means:

(1) any "act of terrorism" as defined in Section 102 of the United States of America' Terrorism Risk Insurance Act of 2002 and any revisions or amendments thereto;

(2) any hostile act(s) or threatened hostile act(s), including without limitation a **computer attack**, by a person who is a member of, or acting on behalf of, or in concert with an entity recognized as a hostile or terrorist entity (domestic or foreign) by the United States of America or any agency thereof, or by any competent and recognized judicial, administrative, executive, law enforcement or legislative body, governmental entity, or non-governmental organization, anywhere in the world;

(3) any hostile act(s) or threatened hostile act(s), including without limitation a **computer attack**, which appears to be intended to, had the effect of, or was undertaken with the express purpose, though not necessarily the sole purpose of, furthering a political, religious, or ideological objective by intimidating, coercing, or harming a government or civilian population, or disrupting the infrastructure of the economy or a segment thereof; or

(4) any hostile act(s) or threatened hostile act(s), including without limitation a **computer attack**, which is verified, certified, recognized or determined by the United States or any agency thereof or by a competent and recognized judicial, administrative, executive, law enforcement or legislative body, governmental entity, or non-governmental organization, anywhere in the world, to be an act of terrorism.

**B.** **Advertising** means material on the **Internet** in any publicity or promotion, including branding, co-branding, sponsorships or endorsements, on **your** own behalf or for others.

**C.** **Assumed under contract** means liability assumed by **you** in the form of hold harmless or indemnity agreements executed with any party, but only for **Internet media** displayed on **your Internet** site under coverage A.

**D.** **Bodily injury** means physical injury, sickness, disease, pain or death, and if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or emotional distress at any time.

**E** **Business** means **your** operations that are dependent upon or make use of **your computer system**.

**F.** **Business interruption loss** means the sum of:

(1) **income loss**;

(2) **extra expense**;

(3) **dependent business interruption loss**; and

(4) **extended business interruption loss**, but only in the event the amount of **extra expense** and **income loss** during the **period of recovery** together exceed the applicable **Retention**.

AGHI005623

Provided, however, **business interruption loss** shall not mean, and there shall be no coverage under coverage E for:

(1) loss arising out of any liability to third-parties for whatever reason;

(2) legal costs or legal expenses of any type;

(3) costs or expenses **you** incur to update, upgrade, enhance, or replace **your computer system** to a level beyond that which existed prior to sustaining **loss**;

(4) loss incurred as a result of unfavorable business conditions; or

(5) costs or expenses **you** incur to identify and remove software program errors or vulnerabilities.

**Business interruption loss** shall be calculated based on the actual **business interruption loss you** sustain per hour. This definition is subject to the limitations set forth in the Definition of **loss**.

G. **Claim** means:

(1) a written or oral demand for money, services, non-monetary relief or injunctive relief;

(2) a **suit**; or

(3) with respect to coverage C only, an **extortion claim**.

H. **Claim expenses** means:

(1) the reasonable and necessary fees charged by an attorney appointed by **us**, as well as all other reasonable and necessary fees, costs and expenses incurred in the defense or investigation of a **claim** by **us** or by **you** with **our** prior written consent; and

(2) premiums for appeal bonds for covered judgments or bonds to release property used to secure a legal obligation, if required in any **claim**; provided, however, **we** have no obligation to appeal or to obtain these bonds.

This definition is subject to the limitations set forth in the Definition of **loss**.

I. **Computer attack** means **unauthorized access, unauthorized use**, transmission of a **malicious code**, or a **denial of service attack** that:

(1) alters, copies, misappropriates, corrupts, destroys, disrupts, deletes, damages, or prevents, restricts, or hinders access to, a **computer system**;

(2) results in the disclosure of private or confidential information stored on **your computer system**; or

(3) results in **identity theft**;

whether any of the foregoing is intentional or unintentional, malicious or accidental, fraudulent or innocent, specifically targeted at **you** or generally distributed, and regardless of whether the perpetrator is motivated for profit.

The terms referenced above are defined as follows:

(1) **Unauthorized access** means the gaining of access to a **computer system** by an unauthorized person or persons.

(2) **Unauthorized use** means the use of a **computer system** by an unauthorized person or persons or an authorized person or persons in an unauthorized manner.

(3) **Malicious code** means an unauthorized corrupting or harmful piece of code. **Malicious code** includes, but is not limited to, computer viruses, "Trojan horses," "worms," and "time or logic bombs."

(4) **Denial of service attack** means an attack launched by a person(s) that sends an excessive volume of electronic data to a **computer system** in order to deplete such **computer system's** capacity, and prevents those who are authorized to do so from gaining access to such **computer system** in a manner in which they are legally entitled. Provided, however a depletion in **your computer system's** capacity shall not be considered a **denial of service attack** if caused by a mistake in determining capacity needs.

AGHI005624

(5) **Identity theft** means the misappropriation of personal identity information of **your** customers, members, or employees that is stored on **your computer system**, including without limitation, social security numbers, account numbers, passwords, credit card numbers, addresses, or phone numbers, and that has resulted in, or could reasonably result in the wrongful or fraudulent use of such information.

J. **Computer system** means computer hardware, software, firmware, and components thereof, including electronic data stored thereon, which are linked together through a network of two or more computers, including such networks accessible through the **Internet**, intranets, extranets, or virtual private networks.

K. **Criminal reward fund** means any amount offered and paid by **us** for information that leads to the arrest and conviction of any individual(s) committing or trying to commit any illegal act related to any coverage under this policy. Provided, however, **we** shall not pay any **criminal reward fund** for, and this policy shall not cover any amount based upon, any information provided by **you, your** auditors, whether internal or external, any individual hired or retained to investigate the aforementioned illegal acts, or any other individuals with responsibilities for the supervision or management of the aforementioned individuals. This definition is subject to the limitations set forth in the Definition of **loss**.

L. **Crisis event** means any covered **claim** or **failure of security** resulting in covered **loss** under this policy. **Crisis event** may also mean, in **our** sole and absolute discretion, any **failure of security** that in the good faith written opinion of **your** chief technology, chief information or chief security officer, is reasonably likely to result in an otherwise covered **claim** or **loss** under this policy.

M. **Crisis expenses** means the reasonable and necessary charges and fees incurred by **you** within six months of a covered **crisis event** first occurring, for the services of a **crisis management firm** retained solely for the purpose of restoring the confidence of **your** customers and investors in the **security** of **your computer system**. This definition is subject to the limitations set forth in the Definition of **loss**.

N. **Crisis management firm** means any public relations firm, crisis management firm, or law firm hired or appointed by **us**, or by **you** with **our** prior written consent, in connection with a **crisis event**.

O. **Damages** means the amount that **you** shall be legally required to pay because of judgments or arbitration awards rendered against **you**, or for settlements negotiated by **us** or **you** in accordance with Clause II, **Defense Costs, Charges and Expenses**, including without limitation:

(1) punitive, exemplary and multiple damages (where insurable by law);

(2) pre-judgment interest; or

(3) post-judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of the judgment within the **policy limit of liability** or applicable **sublimits of liability**.

This definition is subject to the limitations set forth in the Definition of **loss**.

P. **Dependent business** means an entity that **you** do not own, operate or control, but that **you** depend on to conduct **your business**.

Q. **Dependent business interruption loss** means **your income loss** incurred as a direct result of a **material interruption** caused directly by a **failure of security** of a **dependent business**, but only if such **failure of security** would have been covered under this policy if such **dependent business** had been the **named insured**, applying the same terms and conditions herein.

R. **Extended business interruption loss** means **your income loss** during the **extended interruption period**.

S. **Extended interruption period** means the period of time that:

(1) begins on the date and time that the **period of recovery** ends; and

(2) ends on the date and time **you** restore, or would have restored if **you** had exercised due diligence and dispatch, the net profit (or loss) before income taxes that would have been earned by **you** directly through **your business** had there not been a **material interruption**.

AGHI005625

Provided, however, any **extended interruption period** shall end no later than thirty (30) consecutive days after the date and time the **period of recovery** ends.

T. **Extra expense** means the expenses **you** incur that are both reasonable and necessary during the **period of recovery:**

    (1) to reduce **your income loss**, provided that such expenses:

        (a) are over and above the total reasonable and necessary expenses that **you** would have incurred had no **material interruption** occurred; and

        (b) do not exceed the amount by which the **income loss** covered under this policy is thereby reduced;

    (2) to minimize or avoid the **material interruption** and continue **your business**, which would not have been incurred had no **material interruption** occurred; provided, however, that such expenses shall not include **forensic expenses**; or

    (3) as **forensic expenses**, which would not have been incurred had no **material interruption** occurred.

Provided, however, that with respect to any **material interruption** caused by a **failure of security** of **your dependent business**, **extra expense** shall be limited to those expenses described in above subparagraph (1) of this paragraph.

U. **Extortion claim** means any in the form of a threat or connected series of threats to commit an intentional **computer attack** against **you** for the purpose of demanding **extortion monies** from **you**.

V. **Extortion monies** means any monies paid by **you** with **our** prior written consent to a person(s) whom **we** reasonably believe to be responsible for an **extortion claim**, solely where such payment is made to terminate or end such **extortion claim**; provided, however, that such monies shall not exceed the amount **we** reasonably believe to be the **loss** that would have been covered under this policy had the **extortion monies** not been paid. This definition is subject to the limitations set forth in the Definition of **loss**.

W. **Failure(s) of security** means:

    (1) the actual failure and inability of the **security** of **your computer system** to mitigate loss from or prevent a **computer attack**;

    (2) with respect to coverage B only, physical theft of hardware or firmware controlled by **you** (or components thereof) on which electronic data is stored, by a person other than an **insured**, from a premises occupied and controlled by **you**; or

    (3) with respect to **dependent business interruption** only, the actual failure and inability of the **security** of **your dependent business'** **computer system** to prevent a **computer attack**.

**Failure(s) of security** shall also include such actual failure and inability above, resulting from the theft of a password or access code by non-electronic means in direct violation of **your** specific written **security** policies or procedures.

However, in no event, shall any of the above constitute a **failure of security** if resulting from operational errors, unintentional programming errors, or any failure in project planning.

X. **First inception date** means the inception date of the first AIG **netAdvantage Security** policy issued by **us** or any other member company of American International Group, Inc. ("AIG") to the **named insured** and consecutively replaced by **us** or any other AIG member company until the inception date of this policy.

Y. **Forensic expenses** means those additional expenses **you** incur to conduct an investigation of **your computer system** to determine the source or cause of the **failure of security** that caused the **material interruption**.

Z. **Income loss** means the:

    (1) net profit (or loss) before income taxes that is prevented from being earned by **you** through **your business** directly because of a **material interruption**; and

AGHI005626

(2) normal operating expenses incurred by **you** (including payroll), but only to the extent that such operating expenses must necessarily continue during the **period of recovery** (or **extended interruption period**, if applicable), and only to the extent that such expenses would have been incurred by **you** had no **material interruption** occurred.

**Income loss** shall be calculated on an hourly basis based on **your** actual net profit (or loss) and actual and normal operating expenses, as described above. For purposes of this policy, "net profit (or loss)" shall be calculated in accordance with paragraph VII.R.

However, **income loss** shall be reduced to the extent **you** are able to, or should have been able to with the exercise of due diligence and dispatch, in whole or in part, end, reduce or limit the **material interruption** of **your computer system**, or conduct **your business** by other means.

AA. **Information assets** means the:

(1) software or electronic data, including without limitation, customer lists and information, financial, credit card, or competitive information, and confidential or private information, stored electronically on **your computer system**, which is subject to regular back-up procedures; or

(2) capacity of **your computer system**, including without limitation, memory, bandwidth, or processor time, use of communication facilities and any other computer-connected equipment.

BB. **Information asset loss** means:

(1) with respect to **information assets** described in subparagraph III.AA(1) that are altered, corrupted, destroyed, disrupted, deleted or damaged, the actual and necessary costs **you** incur to **restore your information assets**; provided, however:

(a) if **you** cannot **restore** such **information assets**, but can **recollect** such **information assets**, then **information asset loss** shall mean only the actual cost **you** incur to **recollect** such **information assets**; and

(b) if **you** cannot **restore** or **recollect** such **information assets**, then **information asset loss** shall mean only the actual cost **you** incur to reach this determination.

(2) with respect to **information assets** described in subparagraph III.AA(1) that are copied, misappropriated, or stolen, including without limitation any **information assets** that are **trade secrets**, **information asset loss** means the stated value set forth for each scheduled **information asset** as endorsed to this policy (if applicable); or

(3) with respect to **information assets** described in subparagraph III.AA(2) that are misappropriated or stolen, the actual cash value **you** paid for such lost capacity of **your computer system**, which would not have been paid for by **you**, but for such misappropriation or theft.

For purposes of subparagraph (1) above, the following definitions apply:

(1) **Restore** shall mean costs or expenses to restore **information assets** from any collection of partially or fully matching electronic data or software, or through electronic data or disaster recovery methods.

(2) **Recollect** shall mean costs or expenses to: (a) recollect the information making up the **information asset**, including without limitation, information from non-electronic sources; and (b) organize and transcribe such information into the same or substantially similar form as the original **information asset**.

However, **information asset loss** shall not mean, and there shall be no coverage under coverage D for:

(1) loss arising out of any liability to third-parties for whatever reason;

(2) legal costs or legal expenses of any type;

(3) costs or expenses **you** incur to update, upgrade, enhance or replace **your information assets** to a level beyond that which existed prior to sustaining **loss**;

AGHI005627

(4) loss arising out of any physical damage to or destruction of the computer hardware, firmware or any other property except **information assets**;

(5) that part of any **information asset loss**, for which the proof as to its existence or amount is solely dependent on: (i) an inventory computation or comparison; or (ii) a profit and loss computation or comparison; provided, however, where the **insured** establishes wholly apart from such comparison that it has sustained a **information asset loss**, then it may offer its inventory records and actual physical count of inventory in support of the amount of such **information asset loss** claimed;

(6) the cost or expenses **you** incur for researching or developing **information assets**, including without limitation **trade secrets**; provided, however that this subparagraph shall not apply to the stated value of **information assets** scheduled by endorsement (if applicable);

(7) the economic or market value of, or the monetary value of lost market share, profits, or royalties related to, any **information assets**, including without limitation **trade secrets**; provided, however that this subparagraph shall not apply to the stated value of **information assets** scheduled by endorsement (if applicable); or

(8) costs or expenses **you** incur to identify and remove software program errors or vulnerabilities.

This definition is subject to the limitations set forth in the Definition of **loss**.

CC. **Injury** means: (1) alteration, corruption, destruction, disruption, deletion, or damage; or (2) copying, misappropriation or theft.

DD. **Internet** means the worldwide public network of computers commonly known as the Internet, as it currently exists or may be manifested in the future.

EE. **Internet media** means any material, including **advertising**, on **your Internet** site.

FF. **Internet professional services** means any of the following services that **you** provide to others:

(1) **Application service provider (ASP services)**, which means providing access to computer applications controlled by **you** for use by others through the **Internet**;

(2) **Domain name registration services**, which means the following services provided in order to facilitate navigation of the **Internet**: collecting, processing or maintaining information provided to **you** which is necessary for registering a domain name; registering a domain name; or accepting or maintaining a record of domain names in a database;

(3) **e-Commerce transaction services**, which means the following services provided on behalf of others through the **Internet**: processing electronic transactions; registering **Internet** users; or collecting or organizing information provided by **Internet** users, including demographic and transactional data;

(4) **Electronic exchange and auction services**, which means: the electronic matching of third-party buyers and third-party sellers of goods or services through the **Internet**; and providing **e-commerce transactions services** with respect to such buyers and sellers;

(5) **Internet hosting services**, which means: housing or maintaining physical control over others' computer file servers connected to the **Internet**; or providing storage of others' electronic data on **your computer systems** connected to the **Internet**, for the purpose of transmitting electronic data through the **Internet**;

(6) **Internet media services**, which means: the electronic publishing or display of material (including **advertising**) on an **Internet** site; or providing or maintaining of: instant messaging, web-conferencing, webcasting, **Internet**-based electronic mail, online forums, bulletin boards, list-serves, or chat rooms;

(7) **Internet service provider (ISP services)**, which means providing direct access to the **Internet**;

(8) **Managed and network security services** which means: reviewing, analyzing, or consulting with respect, to written security policies intended to prevent a **computer attack**; analyzing, testing, or monitoring the **security** infrastructure or vulnerabilities of **computer systems**; implementing, managing or maintaining **security**; providing content filtering **security**; providing

AGHI005628

**security** patch administration; providing security audits; or preparing security assessment reports;

(9) **Public Key Infrastructure Services**, which means: developing, implementing, or managing public key infrastructure; registering, authenticating or validating the identities of users of public key infrastructure; issuing or managing electronic security credentials or digital certificates for message encryption; monitoring or maintaining the integrity or security of electronic information transmitted using public key infrastructure;

(10) **Search engine services**, which means providing search or navigational computer applications to allow others to locate electronic data through the **Internet**; or

(11) **Web portal services**, which means organizing, aggregating, or providing access to electronic data, material or any service described above (that has been selected and checked in Item 6 of the Declarations) in this definition, through an **Internet** site commonly known as a "web portal."

GG. **Last termination date** means the effective date of cancellation or expiration of the last AIG **netAdvantage Security** policy issued by **us** or any other AIG member company to the **named insured** in a consecutively replaced succession of such AIG **netAdvantage Security** policies to the **named insured** since the **first inception date**.

HH. **Leased worker** means a person provided by an employment contractor or agency under an agreement between the **named insured** and the employment contractor or agency to perform duties related to the conduct of the **named insured's Internet**-related business.

II. **Loss** means the total sum of any **damages, claim expenses, extortion monies, information asset loss, business interruption loss, criminal reward fund**, and **crisis expenses**. However, "loss," "damages," "claim expenses," "extortion monies," "information asset loss," "business interruption loss," "criminal reward fund" and "crisis expenses" shall not mean, and this policy shall not cover:

(1) except as with respect to **business interruption loss**, production costs or loss of profits, the cost of recall, reproduction, reprinting, or correction of material by any person or entity;

(2) except as with respect to **business interruption loss**, compensation, benefits, overhead, charges or expenses of **you** or **your** employees;

(3) any costs or expenses incurred by any person or entity to withdraw or recall **your** material, media, medium (including without limitation **Internet media**) or professional services from the marketplace, or from loss of use arising out of such withdrawal or recall;

(4) any fines, penalties, or taxes;

(5) the monetary value of any electronic fund transfers or transactions by **you** or on **your** behalf, which is lost, diminished or damaged during transfer from, into or between **your** accounts;

(6) with respect to **damages** and **claim expenses** only, any amounts for which **you** are not financially liable or for which there is no legal recourse against **you**;

(7) the costs and expenses of complying with any injunctive or other form of equitable relief; or

(8) matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed.

JJ. **Material interruption** means the actual and measurable interruption or suspension of **your computer system**, which is directly caused by a **failure of security**.

KK. **Named insured** means the individual, entity, partnership, or corporation designated as such in Item 1 of the Declarations.

LL. **Over-redemption** means coupons, price discounts, prizes, awards or any other valuable consideration given in excess of the total contracted or expected amount.

MM. **Period of recovery** means the time period that:

(1) begins on the date and time that a **material interruption** first occurs; and

AGHI005629

(2) ends on the date and time that the **material interruption** ends, or would have ended if **you** had exercised due diligence and dispatch.

Provided, however, the **period of recovery** shall end no later than thirty (30) consecutive days after the date and time that the **material interruption** first occurred.

**NN. Policy period** means the period commencing on the inception date set forth in Item 2 of the Declarations and ending on the earlier of either the expiration date or the effective date of cancellation of this policy. If **you** become an **insured** under this policy after the inception date, the **policy period** begins on the date **you** became an **insured** per the terms of this policy or by endorsement.

**OO. Policy limit of liability** means the aggregate limit of liability for this policy set forth in Item 3A of the Declarations.

**PP. Pollutants** means, without limitation, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

**QQ. Privacy policy** means any policy in any form regarding the collection, dissemination, storage, or treatment of information regarding customers, visitors to an **Internet** site, or other persons.

**RR. Property damage** means: (1) physical injury to, loss or destruction of, tangible property including the resulting loss of use thereof; or (2) loss of use of tangible property that has not been physically injured or destroyed.

**SS. Retention** shall mean the applicable retention set forth in Item 4 of the Declarations with respect to each coverage.

**TT. Retroactive Date** shall mean the date set forth in Item 5 of the Declarations, or otherwise endorsed to this policy.

**UU. Security** means hardware, software or firmware whose function or purpose is to mitigate loss from or prevent a **computer attack**. **Security** includes, without limitation, Firewall, filters, DMZ's, computer virus protection software, intrusion detection, the electronic use of passwords or similar identification of authorized users. **Security** also includes **your** specific written policies or procedures intended to directly prevent the theft of a password or access code by non-electronic means.

**VV. Sublimit of liability** means each of the respective and applicable sublimits of liability set forth in Columns (1) and (2) of Item 3B on the Declarations.

**WW. Subsidiary** shall mean any corporation:

(1) of which the **named insured** owns on or before the inception date of the **policy period** more than fifty percent 50% of the issued and outstanding voting stock either directly or indirectly through a **subsidiary**; or

(2) which becomes a **subsidiary** during the **policy period** provided that such corporation does not represent more than a five percent (5%) increase in the total assets or gross revenue of the **named insured** as of the date of the acquisition. Where such corporation represents an increase in the total assets or gross revenue of the **named insured** of more than five percent (5%), such corporation shall be deemed a **subsidiary** under the policy, but only upon the condition that within ninety (90) days of its becoming a **subsidiary**, **you** shall have provided **us** with full particulars of the new **subsidiary** and agreed to any additional premium and/or amendment of the provisions of this policy required by **us** relating to such new **subsidiary**, subject to the review and acceptance by **us** of full and complete underwriting information. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named insured** paying when due any additional premium required by **us** relating to such new **subsidiary**, and **us** issuing an endorsement to this policy naming such **subsidiary** as an **insured**.

A corporation becomes a **subsidiary** when the **named insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through one or more of its

AGHI005630

**subsidiaries**, and ceases to be a **subsidiary** at such time when the **named insured** ceases to own more than fifty percent (50%) of the issued and outstanding voting stock, either directly or indirectly through one or more of its **subsidiaries**.

This policy does not cover any **claim** against or **loss** of a **subsidiary**, or any employee thereof, for any **wrongful act, extortion claim, failure of security, criminal reward fund, crisis event** or **loss** that occurred when the **named** did not own more than fifty percent (50%) of the issued and outstanding voting stock **insured** of such **subsidiary**, either directly or indirectly through one or more of its other **subsidiaries**.

XX. **Suit** means a civil proceeding for monetary, non-monetary or injunctive relief that is commenced by service of a complaint or similar pleading. **Suit** shall also include a binding arbitration proceeding in which **damages** are alleged and to which **you** must submit or do submit with **our** prior written consent.

YY. **Trade secret** means information (including any idea) that has been reduced to a written or electronic form, including a formula, compilation, pattern, program, device, method, process, or technique that:

    (1) derives independent economic value, actual or potential, from not being generally known and not being readily ascertainable through proper means by other persons who can obtain economic advantage from its disclosure or use;

    (2) is the subject of reasonable efforts to maintain its secrecy; and

    (3) is used, capable of being used, or intended to be used in commerce.

ZZ. **Waiting hours period** means the number of hours set forth in subsection E of item 4 of the Declarations and shall apply to each **period of recovery**.

AAA. **Waiting hours retention** means the dollar amount of **business interruption loss** you incur during a **waiting hours period**.

BBB. **Wrongful act(s)** means:

    (1) with respect to coverage A, any actual or alleged breach of duty, neglect, act, error, misstatement, misleading statement, or omission that results in:

        (a) any form of defamation or other tort related to disparagement or harm to character, including libel, slander, product disparagement or trade libel; or the infliction of emotional distress, outrage or outrageous conduct directly resulting from the foregoing;

        (b) an infringement of copyright, domain name, title, slogan, trademark, trade name, trade dress, mark or service name, or any form of improper deep-linking or framing; plagiarism, or misappropriation of ideas under implied contract or other misappropriation of property rights, ideas or information; or

        (c) any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness; and

    (2) with respect to coverage B only, any actual or alleged breach of duty, neglect, act, error or omission that results in a **failure of security** as provided in subparagraphs (1) or (2) of the definition of **failure of security**.

CCC. **You, your** or **insured** means:

    (1) the **named insured**;

    (2) any **subsidiary** of the **named insured**, but only with respect to **wrongful acts, extortion claims, failures of security, criminal reward funds, crisis events** or **loss** that occur while it is a **subsidiary** and is otherwise covered by this policy;

    (3) any past, present or future employee of the **named insured** or **subsidiary** thereof, but only while acting within the scope of their duties as such;

AGHI005631

(4) with respect to coverage A, any agent or independent contractor, including distributors, licensees and sub-licensees, in their provision of material for **Internet media** on behalf or at the direction of the **named insured**, but only in the event that a **claim** has also been brought against an **insured** as defined in subparagraphs (1) through (3) above, and only while such **claim** is pending against such **insured**;

(5) any **leased worker**; and

(6) any entity scheduled by written endorsement to this policy whom the **named insured** is required by contract to add as an insured under this policy, but only for the **wrongful acts** of the **named insured**.

**DDD. Your computer system** means a **computer system** under the ownership, operation or control of the **named insured** or its **subsidiaries**.

## IV. EXCLUSIONS – CLAIMS AND LOSSES NOT COVERED

Under coverages A, B, C, D, E, F and G, **we** will not cover any **claim**, **wrongful act**, or **loss** alleging, arising out of or resulting, directly or indirectly, from:

**A.** any of the following:

(1) fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, an act of God or any other physical event, however caused;

(2) strikes or similar labor action, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, **act(s) of terrorism** (whether domestic or foreign), committed by a person or persons whether acting on their own behalf or on behalf of or in connection with any organization, or any action taken to hinder or defend against these actions; or

(3) electrical or mechanical failures, including any electrical power interruption, surge, brownout or blackout; a failure of telephone lines, data transmission lines, satellites or other infrastructure comprising or supporting the **Internet**, unless such lines or infrastructure were under **your** operational control;

**B.** any of the following:

(1) any presence of **pollutants**;

(2) any actual, alleged or threatened discharge, dispersal, release or escape of **pollutants**; or

(3) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**, or in any way respond to or assess the effects of **pollutants**;

**C.** any of the following:

(1) the purchase, sale, offer of or solicitation of an offer to purchase or sell securities;

(2) any violation of any securities law, including provisions of the Securities Act of 1933, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state, local or foreign laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

(3) any violation of the Organized Crime Control Act of 1970 (commonly known as "Racketeer Influenced And Corrupt Organizations Act" or "RICO"), as amended, or any regulation promulgated thereunder or any similar federal, state local or foreign laws similar to the foregoing, whether such law is statutory, regulatory or common law;

**D.** infringement of any patent;

**E.** **your** employment practices or any discrimination of any person or entity on any basis, including, without limitation, race, creed, color, religion, ethnic background, national origin, age, handicap, disability, sex, sexual orientation or pregnancy;

AGHI005632

**F.** antitrust violations, restraint of trade or unfair competition, including, without limitation, violations of the Sherman Act, the Clayton Act or the Robinson–Patman Act, or any other federal, state, local or foreign laws regulating the same or similar conduct;

**G.** any misappropriation, theft, copying, display or publication of any **trade secret** by, or with active cooperation, participation, or assistance of, any **insured**, any of **your** former employees, subsidiaries, directors, officers, partners, trustees, or any of **your** successors or assignees;

**H.** **bodily injury** or **property damage**;

**I.** any **insured** advising, requiring, obtaining, or failing to advise, require, obtain, effect or maintain, any bond, suretyship or other insurance.

Under coverages A, B, C, F and G only, **we** will not cover **claims**, **wrongful acts**, or **loss** alleging, arising out of or resulting, directly or indirectly, from:

**J.** any **claim**, demand, **suit**, arbitration, mediation, litigation, or administrative, bankruptcy or regulatory proceeding or investigation, prior to or pending as of the **first inception date**; or alleging or arising out of or relating to any fact, circumstance, situation or **wrongful act** alleged in such **claim**, demand, **suit**, arbitration, mediation, litigation, or administrative, bankruptcy or regulatory proceeding or investigation;

**K.** any liability or obligation under any contract or agreement, including, without limitation, any contract price, cost guarantee or cost estimate being exceeded; however, this exclusion does not apply to:

    (1) liability **you** would have in the absence of such contract or agreement; or

    (2) with respect to coverage A only, liability **assumed under contract**;

**L.** **over-redemption**;

**M.** any of the following:

    (1) any warranty, representation or guarantee; inaccurate, inadequate, or incomplete description of the price of goods, products or services; or any failure of goods, products or services to conform with an advertised quality or performance; or liquidated damages; or any failure to provide goods or products, or perform services within a specified time period, by a deadline or according to specified milestones; or the collection of or seeking the return of fees or royalties or other compensation paid to **you**; or the cost of providing, correcting, re-performing, or completing any services, including without limitation any professional services; or the cost of providing, repairing, or replacing any product; or **your** fees, cost or profit guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded;

    (2) any intentional violation of **your privacy policy**; or

    (3) intentional, knowing or reckless misrepresentation in **advertising**, false **advertising**, or unfair or deceptive business practices, including, without limitation, violations of any local, state or federal consumer protection or privacy laws; however, with respect to coverage A only, **we** will defend **suits** alleging any of the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against **you**, as to such conduct, at which time **you** shall reimburse **us** for **claim expenses**; provided, however, **we** will not defend such **suits** if they allege any of the foregoing conduct that **has** been the subject of a criminal proceeding in which **you** have been found guilty, or pleaded *nolo contendere* or no contest;

**N.** any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violation of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA") or amendments thereto, or similar statutory or common law of the United States of America or any state or jurisdiction therein;

**O.** any **wrongful act**, **failure of security**, **extortion claim**, **crisis event**, circumstances or events committed or occurring prior to the **first inception date** if on or before the **first inception date**, **you** knew or could have reasonably foreseen that such **wrongful act**, **failure of security**,

AGHI005633

**extortion claim**, **crisis event**, circumstance or event could give rise to a **claim** against **you**; provided, however, with respect to coverage A only or **loss**, if the **wrongful act** arises out of material which was initially disseminated or broadcast prior to the **first inception date**, and is disseminated or broadcast again after the **first inception date** and prior to the **last termination date**, then in such event, **our** maximum liability shall be limited to that portion of the total **loss** which the number of disseminations or broadcasts during the period of time on or after the **first inception date** and prior to the **last termination date** bears to the total number of disseminations or broadcasts upon which the **claim** is made.

P. any circumstance or occurrence that has been reported to an insurer on, or is covered under, any other policy of insurance prior to the inception date of this policy; or alleging or arising out of the same **wrongful act** or series of continuous, repeated or related **wrongful acts** or alleging the same or similar facts, alleged or contained in any **claim** that has been reported, or any **wrongful act(s)** of which notice has been given, under any policy of which this policy is a replacement or succeeds in time;

Q. any otherwise covered **wrongful act** committed prior to the **Retroactive Date** or after the **last termination date**.

Under coverages A, B, C, F and G only, we will not cover any **claim** (or any **wrongful act** or **loss** related to such **claim**):

R. against **you** that is brought, directly or indirectly, by or on behalf of:

(1) the Federal Trade Commission ("FTC"), the Department of Health and Human Services ("HHS"), the Office of Civil Rights, ("OCR") the Federal Communications Commission ("FCC") or any other federal, state or local government agency; or

(2) the American Society of Composers, Authors and Publishers, the Society of European Stage Authors and Composers, Broadcast Music, Inc., or any other licensing or rights organizations in such entity's regulatory, quasi-regulatory or official capacity, functions or duties;

S. against **you** that is brought, directly or indirectly, by or on behalf of:

(1) any **insured** except as one described in subparagraph III.CCC.(6);

(2) any entity that is owned, managed or operated, directly or indirectly, in whole or in part, by **you**;

(3) any parent company, subsidiary, director, officer, partner, trustee, successor or assignee of **yours**, or anyone affiliated with **you** or such business entity through common majority ownership or control; or

(4) any independent contractor supplying material or services to **you**, but, as regards such independent contractor, this exclusion applies only with respect to **claims** involving disputes over the ownership or exercise of rights in material or services supplied.

Under coverages B, C, D and E only, **we** will not cover any **claim**, **wrongful act**, or **loss** alleging, arising out of or resulting, directly or indirectly, from:

T. any of the following:

(1) any shortcoming in **security** that **you** knew about or ought reasonably to have known about prior to the inception of this policy;

(2) **your** failure to take reasonable steps, to use, design, maintain and upgrade **your security**; or

(3) the inability to use, or lack of performance of, software:

(a) due to expiration, cancellation, or withdrawal of such software;

(b) that has not yet been released from its development stage; or

(c) that has not passed all test runs or proven successful in applicable daily operations;

U. any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled, if committed by any of **your**:

AGHI005634

(1) directors, officers, trustees, governors, management committee members, members of the management board or partners (or the equivalent positions), whether acting alone or in collusion with other persons; or

(2) employees (other than officers) or independent contractors employed by **you** if any of **your** elected or appointed officers possessed, at any time, knowledge of any dishonest, fraudulent, malicious, or criminal acts committed by such employee or independent contractor that caused a direct loss to an **insured** or any other person.

Under coverages D and E, **we** will not cover **loss** alleging, arising out of or resulting, directly or indirectly, from:

V. any seizure, confiscation, nationalization, or destruction of **your computer system** or **information assets** by order of any governmental or public authority;

W. any wear and tear or gradual deterioration of **your computer system** or **information assets.**

Under coverage A, **we** will not cover any **claim, wrongful act,** or **loss** alleging, arising out of or resulting, directly or indirectly, from:

X. any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled; provided, however, **we** will defend **suits** alleging any of the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against **you,** as to such conduct, at which time **you** shall reimburse **us** for **claim expense.** However, in no event will **we** defend such **suits** if they allege any of the foregoing conduct that has been the subject of a criminal proceeding in which **you** have been found guilty, or pleaded *nolo contendere* or no contest;

Y. any **failure of security** of **your computer system**; or

Z. the rendering or failure to render any professional service, including without limitation any **Internet Professional Services.**

## V. LIMITS OF LIABILITY

### A. General

(1) **Aggregate Limit of Liability for Policy**

The **policy limit of liability** is the most **we** will pay for **loss** under this policy, in the aggregate, for all coverages combined, regardless of the number of **wrongful acts, failures of security, loss, criminal reward funds, crisis events,** persons or entities covered by this policy, claimants or **claims** brought, or coverages triggered.

(2) **Sublimits of Liability for Each Coverage**

(a) With respect to coverages A and B, the most **we** will pay:

(i) for all **damages** and **claim expenses** (combined) arising from all covered **claims,** in the aggregate for this policy, shall be the applicable **sublimit of liability** set forth in Item 3B–Column(2) of the Declarations; and

(ii) as **damages** and **claim expenses** (combined) arising from each covered **claim** made against **you** for **your wrongful act(s)** shall be the applicable **sublimit of liability** set forth in Item 3B–Column(1) of the Declarations.

All **claims** arising from the same **wrongful act(s)** or series of continuous, repeated or related **wrongful acts** shall be treated as one **claim.** With respect to coverage A, the policy limit of liability and applicable sublimits of liability and AIG **netAdvantage Security** policy issued by **us** to the **named insured** in effect when the first such **wrongful act** took place after the **first inception date,** shall be the only policy limit of liability, applicable sublimit of liability, and policy that shall apply.

(b) With respect to coverage C, the most **we** will pay:

(i) for all **extortion monies** and **claim expenses** (combined) arising from all covered **extortion claims** in the aggregate for this policy, shall be the applicable, **sublimit of liability** set forth in Item 3B–Column(2) of the Declarations; and

AGHI005635

    (ii) as **extortion monies** and **claim expenses** (combined) arising from each covered **extortion claim** made against **you** shall be the applicable **sublimit of liability** set forth in Item 3B–Column(1) of the Declarations.

All **extortion claims** from the same person, or persons acting in concert, shall be treated as one **extortion claim.** With respect to coverage C, the policy limit of liability and applicable sublimits of liability, and AIG **netAdvantage Security** policy issued by **us** to the **named insured** in effect when the first such **extortion claim** took place after the **first inception date**, shall be the only policy limit of liability, applicable sublimit of liability and policy that shall apply.

(c) With respect to coverage D, the most **we** will pay:

    (i) for all covered **information asset loss** arising from all covered **failures of security**, in the aggregate for this policy, shall be the applicable **sublimit of liability** set forth in Item 3B–Column(2) of the Declarations;

    (ii) as covered **information asset loss** arising from each covered **failure of security** shall be the applicable **sublimit of liability** set forth in Item 3B–Column(1) of the Declarations; and

    (iii) as covered **information asset loss** arising from each covered **failure of security** resulting in the theft, misappropriation, or copying of any **information asset**, shall be the amount set forth by specific endorsement, if applicable, for each such **information asset**. Such **information asset loss** shall be part of and subject to the **sublimits of liability** for coverage E set forth in Item 3B of the Declarations. In the event no such endorsement is attached, the limit of liability for such **information asset loss** shall be zero.

(d) With respect to coverage E, the most **we** will pay:

    (i) for all covered **business interruption loss** arising from all covered **failures of security**, in the aggregate for this policy, shall be the applicable **sublimit of liability** set forth in Item 3B–Column(2) of the Declarations;

    (ii) as covered **business interruption loss** arising from each covered **failure of security** shall be the applicable **sublimit of liability** set forth in Item 3B–Column(1) of the Declarations;

    (iii) as covered **business interruption loss** per hour during the **period of recovery** (or **extended interruption period** if applicable) from any and all covered **failures of security** is ten percent (10%) of the applicable **sublimit of liability** set forth in Item 3B–Column(2) of the Declarations;

    (iv) for the sum of covered **dependent business interruption loss** and any **extra expense** related thereto, arising from any and all covered **failures of security**, in the aggregate for this policy, shall be one hundred thousand dollars ($100,000); and

    (v) for covered **forensic expenses** arising from each covered **failure of security** shall be one hundred thousand dollars ($100,000).

(e) With respect to coverages D and E, any **failure(s) of security** arising from the same **failure of security** or a series of continuous, repeated or related **failures of security** shall be treated as one **failure of security**. With respect to coverages D and E, the policy limit of liability and applicable sublimits of liability, and AIG **netAdvantage Security** policy issued by **us** to the **named insured** in effect when the first such **failure of security** took place after the **first inception date**, shall be the only policy limit of liability, applicable sublimit of liability, and policy that shall apply.

(f) With respect to coverage F, the most **we** will pay for all covered **loss** that is paid out as a **criminal reward fund**, in the aggregate for this policy, shall be the fifty thousand dollar ($50,000) **sublimit of liability** set forth in Item 3B–Column(2) of the Declarations.

(g) With respect to coverage G, the most **we** will pay for all covered **crisis expenses**, in the aggregate for this policy, shall be the fifty thousand dollar ($50,000) **sublimit of liability** set forth in Item 3B–Column(2) of the Declarations.

AGHI005636

With respect to coverages A, B and C, in the event a **claim** or **wrongful act**, or series of continuous, repeated or related **wrongful acts** results in **loss** that is covered under more than one coverage, the single highest applicable **sublimit of liability** set forth in Item 3B–Column(2) of the Declarations shall be the most we shall pay in total for all of the applicable coverages combined.

**Damages, claim expenses, extortion monies, information asset loss, business interruption loss, criminal reward fund** and **crisis expenses** are all part of and subject to the **policy limit of liability** and applicable **sublimits of liability** in this policy.

**B. Multiple Policies**

Two or more policies may be issued by **us** or other AIG member companies to **you**. These policies may provide coverage for:

(1) **loss** arising from the same **claim, wrongful act, extortion claim, criminal reward fund, failure of security, crisis event**, or events or circumstances, or series of continuous, repeated or related **claims, wrongful acts, extortion claims, failures of security, crisis events**, or events or circumstances; or

(2) **loss** for which persons or organizations covered in those policies are jointly and severally liable.

In such case, **we** will not be liable under this policy for an amount greater than the proportion of the **loss** that this policy's applicable limits of liability bears to the total applicable limits of liability under all such policies. In addition, the total limit of liability under all such policies combined shall not be greater than the highest applicable limit of liability among all such policies.

## VI. RETENTION AND COINSURANCE

**A.** **We** will only pay for **loss** in excess of any applicable **Retention** amounts set forth in Item 4 of the Declarations. In **our** sole and absolute discretion, **we** may pay all or part of the applicable **Retention** in which case **you** agree to repay **us** immediately after **we** notify **you** of the payment. The applicable **Retention** shall first be applied to **loss** covered by this policy that is paid by **us** or by **you**, with **our** prior written consent.

**B.** With respect to coverages A, B and C the applicable **Retention** applies to each **claim** and **you** may not insure it. With respect to coverages A and B, all **claims** arising from the same **wrongful act(s)** or series of continuous, repeated, or related **wrongful acts** shall be considered one **claim** and subject to the single highest applicable **Retention**. With respect to coverage C, all **extortion claims** from the same person, or persons acting in concert, shall be treated as one **extortion claim**. Any **claim** covered under coverages A or B, that relates to or arises from an **extortion claim** shall, together with the **extortion claim**, be considered one **claim**, and subject to the single highest applicable **Retention**.

**C.** With respect to coverage D, the **Retention** applies to each **failure of security** or series of continuous, repeated or related **failures of security** and **you** may not insure it.

**D.** With respect to **business interruption loss** under coverage E, the applicable **Retention** is the greater of: (1) the dollar retention amount set forth in Item 4 of the Declarations or (2) the **waiting hours retention**. **You** are responsible for the **Retention** whether based on the dollar retention or **waiting hours retention** amount, and **you** may not insure it. The dollar retention amount applies to each **failure of security** or series of continuous, repeated or related **failures of security**. The **waiting period retention** applies to each **period of recovery**. In the event a **failure of security** or series of continuous, repeated or related **failures of security** results in more than one **period of recovery**, a **waiting hour retention** shall apply to each **period of recovery**.

Provided, however, in the event a **failure of security** or series of continuous, repeated or related **failures of security** results in coverage under both coverages D and E for purposes of determining the applicable **Retention** for coverage E, the dollar retention amount set forth in Item 4 of the Declarations shall be reduced by the actual amount **you** pay as a **Retention** under coverage D.

**E.** No **Retention** shall apply to coverages F and G. Provided, however, with respect to coverage G, **you** shall be responsible to pay coinsurance of twenty percent (20%) of all covered **crisis**

AGHI005637

**expenses** until **we** have paid $50,000. **We** shall be responsible to pay eighty percent (80%) of such covered expenses until **we** have paid $50,000. Thereafter, **you** shall be responsible to pay for one–hundred percent (100%) of such costs.

## VII. OTHER PROVISIONS AFFECTING COVERAGE

### A. What You Must Do in the Event of a Claim or Loss

(1) Before coverage will apply, **you** must notify **us** in writing of:

    (a) with respect to coverage A, any **claim** against **you** as soon as practicable;

    (b) with respect to coverage B and C, any **claim** against **you** as soon as practicable, but in all events no later than either:

        (i) within the **policy period** or Extended Reporting Period, if applicable; or

        (ii) within thirty (30) days after the end of the **policy period** or Extended Reporting Period, if applicable, as long as such **claim** is reported to **us** in writing no later than thirty (30) days after the date such **claim** was first made against **you**;

    (c) with respect to coverages D and E, **your loss** or of a circumstance that may result in a **loss** as soon as practicable, but in all events either within: the **policy period** or Extended Reporting Period, if applicable; or the policy period of any policy issued by **us** or any other AIG member company that immediately replaces this policy (or any successive and uninterrupted series of policies issued by **us** or by any other AIG member company to replace this policy).

    (d) with respect to coverage G, any **crisis event** as soon as practicable after the **crisis event** commences, but in no event later than the end of the **policy period** or Extended Reporting Period, if applicable.

Such notice and all other information and documentation required to be provided under this policy in the event of a **claim** or **loss** should be directed to the following address:

AIG Technical Services, Inc.

Box 1000

New York, NY 10268

(2) In addition, with respect to all coverages under this policy, **you** must also:

    (a) immediately record the specifics of any **claim** and the date **you** first received such **claim**;

    (b) immediately record the specifics of any **loss** or **failure of security** and the date **you** first became aware of such **loss** or **failure of security**;

    (c) take prompt steps to minimize the **loss** and take reasonable steps to prevent further **loss**;

    (d) at **our** request report such **loss** or **failure of security** to the FBI, CERT, ISAC or any other central reporting or investigative organization that **we** may designate;

    (e) upon **our** request, furnish to **us** any and all documentation within **your** possession; and

    (f) send **us** copies of all demands, suit papers, or other legal documents **you** receive, as soon as possible.

### B. What You Must Do in the Event of a Loss under Coverage D or E

In addition to the items in paragraph VII.A above, with respect to **loss** under coverages D or E, before coverage will apply, **you** must:

(1) complete and sign a written, detailed and sworn proof of loss within ninety (90) days after the discovery of a **loss** (unless such period has been extended by **our** written agreement) including a full description of such **loss** and the circumstances surrounding such **loss**, including without limitation, the time, place and cause of the **loss**, a detailed calculation of any **business interruption loss**, **your** interest and the interest of all others in the property, the sound value thereof and the amount of **loss** or damage thereto and all other insurance thereon. Proof of loss shall also include the underlying documents and materials of whatever media that reasonably relates to or forms a part of the basis of the claim for such **loss**; and

AGHI005638

(2) upon **our** request, submit to an examination under oath.

All adjusted **claims** shall be due and payable thirty (30) days after the presentation and written acceptance by **us** of satisfactory proof of **loss** to the address shown above. The costs and expenses of establishing or proving **your loss** for this policy, including without limitation those connected with preparing a proof of loss, shall be **your** obligation, and are not covered under this policy.

## C. Your Assistance and Cooperation

In addition to the items in paragraph VII.A, before coverage will apply **you** must provide **us** with any cooperation and assistance that **we** may request, including assisting **us** in:

(1) any investigation of a **claim**, **loss**, or circumstance (including submission to an examination by **us** or **our** designee, under oath if required);

(2) making settlements;

(3) enforcing any legal rights **you** or **we** may have against anyone who may be liable to **you**;

(4) attending depositions, hearings and trials;

(5) executing any documents that **we** deem are necessary to secure our rights under this policy;

(6) securing and giving evidence, and obtaining the attendance of witnesses;

(7) any inspection or survey conducted by **us** pursuant to paragraph VII.S. of this policy; and

(8) any investigation of any **extortion claim**, payment of any **extortion monies** that **we** deem to be reasonable and necessary to terminate or end the **extortion claim** and subsequent attempts, if any, by **us** to recovery part or all of such **extortion monies**.

**You** shall take such actions that, in **your** reasonable judgment, are deemed necessary and practicable to prevent or limit the dissemination of material that is erroneous, false, or untrue.

**You** shall not admit any liability, assume any financial obligation or pay out any money without **our** prior consent. If **you** do, it will be at **your** own expense; provided, however, the foregoing shall not apply to a settlement pursuant to paragraph II.D of this policy so long as **you** provide **us** written notice of such settlement as soon as practicable, but in no case later than thirty (30) days after such agreement in principle is reached.

In all events, **you** shall not take any action, or fail to take any required action, without **our** written consent, which prejudices **our** rights under this policy.

## D. Where Coverage Applies

**We** cover **wrongful acts** that occur, **claims** that are brought, and **losses** suffered, anywhere in the world, except **we** shall not cover such **wrongful acts**, **claims** or **losses** in countries against which the Office of Foreign Assets Control of the United States Department of the Treasury administers or enforces economic or trade sanctions, or if otherwise prohibited by law.

## E. Actions Against Us

(1) No one can sue **us**, or commence alternative dispute resolution as provided by paragraph VII.T of this policy, to recover under this policy: (1) unless there has been full compliance with all of the terms of this policy; and (2) with respect to coverages D and E, more than twenty-four (24) months after **you** first incur **loss**.

(2) A person or organization may sue **us** to recover up to the **policy limit of liability** only after **your** liability has been decided by:

(a) an arbitration award as a result of arbitration commenced in accordance with paragraph VII.T of this policy;

(b) a trial or appeal, after which a final judgment has been entered; or

(c) a written agreement signed by **you**, **us** and the party making the **claim**.

Any person, organization or legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. **We** may not be impleaded by the **insured** or its legal representative in any legal action brought against the **insured** by any person or organization.

AGHI005639