**F. Other Insurance**

Except as otherwise stated to the contrary elsewhere in the policy, such insurance as is provided by this policy shall be excess of any other valid and collectible insurance available to **you**.

**G. Subrogation**

**You** may be able to recover all or part of a **claim** or a **loss** from someone other than **us**. **You** therefore must do all that is possible after a **claim** or **loss** to preserve any such right of recovery. If **we** make a payment under this policy, that right of recovery will belong to **us**. **You** will do whatever is necessary, including signing documents, to help **us** obtain that recovery.

**H. Policy Changes**

This policy contains all the agreements between **you** and **us** concerning this insurance. This policy can only be changed by a written endorsement **we** issue and make a part of this policy.

**I. Assignment**

**You** cannot assign or transfer any interest in this policy. If **you** die or are declared legally incompetent, **your** rights and duties will be transferred to **your** legal representative, but only while acting within the scope of his or her duties as such, and only with respect to **your wrongful acts** that took place prior to **your** death or incompetency.

**J. Special Rights and Duties of Named Insured**

**You** agree that when there is more than one person or organization covered under this policy, the **named insured** first listed in Item 1. of the Declarations shall act on behalf of all **insureds** as to:

(1) giving and receiving notice, including, without limitation, notice of **claims**, **loss**, or cancellation;

(2) acceptance or refusal of any applicable Extended Reporting Period;

(3) payment of premiums and receipt of return premiums; and

(4) acceptance of any endorsements to this policy.

**K. Cancellation**

This policy may be canceled by the **named insured** by:

(1) surrender of this policy; or

(2) giving written notice to **us** stating when thereafter such cancellation shall be effective.

This policy may also be canceled by **us** by **our** delivering to the **named insured** by registered, certified, other first class mail or other reasonable delivery method, at the **named insured's** address set forth in the Declarations, written notice stating when, not less than sixty (60) days thereafter (ten (10) days in the event of cancellation for non-payment of premium), the cancellation shall be effective. Proof of mailing or delivery of such notice as aforesaid shall be sufficient proof of notice and this policy shall be deemed canceled as to all **insureds** at the date and hour specified in such notice. If this policy shall be canceled by the **named insured**, we shall retain the customary short rate proportion of the premium therein. If the policy is canceled by **us**, **we** shall retain the pro rata proportion of the premium therein. Payment or tender of the unearned premium by **us** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice for cancellation, as set forth above, is less than the period set forth in any law controlling construction thereof, the period set forth above shall be deemed to be amended so as to equal the minimum period of limitation set forth in such controlling law.

**L. Extended Reporting Provisions**

**(1) Automatic Extended Reporting Period**

If **we** or the **named insured** cancel this policy or refuse to replace this policy, the **named insured** shall have the right following the effective date of such cancellation or refusal to a period of sixty (60) days (herein referred to as the "Automatic Extended Reporting Period") in which to give written notice to **us** of **claims** first made against any **insured** during the Automatic Extended Reporting Period for any **wrongful act** occurring prior to the end of the **policy period** and otherwise covered by this policy.

78088 (3/03)  *COPY*  19

AGHI005640

The Automatic Extended Reporting Period shall not apply to **claims** that are covered under any subsequent insurance **you** purchase or that is purchased for **your** benefit, or that would be covered, but for the exhaustion of the amount of insurance applicable to such **claims** or that is within any applicable **Retention**.

**(2) Optional Extended Reporting Period**

If **we** or **named insured** shall cancel this policy or refuse to replace this policy, the **named insured** shall have the right, upon payment of an additional premium of up to seventy-five percent (75%) of the full annual premium, to a period of up to one (1) year, or upon payment of an additional premium of up to two hundred percent (200%) of the full annual premium to a period of up to three (3) years, following the effective date of such cancellation or refusal (herein referred to as the "Optional Extended Reporting Period") in which to give written notice to **us** of **claims** first made against **you** during the Optional Extended Reporting Period for any **wrongful act** occurring prior to the end of the **policy period** and otherwise covered by this policy.

The Extended Reporting Periods provided pursuant to subparagraphs (1) and (2) above, do not apply to coverages A, D, E, F, and G.

**(3) Coverage D and E Extended Reporting Period**

If **we** or the **named insured** shall cancel this policy or refuse to replace this policy, **you** shall have up to one (1) year following the effective date of such cancellation or refusal to discover and report any covered **loss** under coverages D and E.

**(4)** The rights contained in this paragraph VII.L. shall terminate unless the **named insured** provides written notice of such election together with the additional premium due to **us** within thirty (30) days of the effective date of cancellation or refusal to replace this policy. The additional premium for the Optional Extended Reporting Period shall be deemed fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable. This paragraph VII.L and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium. **Our** offer of terms, conditions, limits of liability or premiums different from those of the expiring policy shall not constitute a refusal to replace this policy.

**(5)** As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **policy period**.

**(6)** The **policy limit of liability** and applicable **sublimits of liability** for any Extended Reporting Period (including any Automatic Extended Period and Optional Extended Period) shall be part of, and not in addition to, the **policy limit of liability** and applicable **sublimits of liability** for the **policy period**.

**(7)** If the **named insured** exercises its right to purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period shall not apply.

**M. Notice of Circumstance and Related Claims**

**(1)** Under coverage B, if during the **policy period** or the Extended Reporting Period, as applicable, **you** become aware of any facts or circumstances that may reasonably be expected to give rise to a **claim** against **you** for a **wrongful act** that occurs prior to the end of the **policy period**, and provided **you** give written notice to **us** during the **policy period** or the Extended Reporting Period, as applicable, of the circumstances and the reasons for anticipating such a **claim**, with full particulars as to the **wrongful act(s)**, dates, persons and entities involved, then any **claim** that is subsequently made against **you** arising out of such **wrongful act** or the same **wrongful act(s)** or series of continuous, repeated or related **wrongful acts**, shall for the purposes of this policy, be treated as a **claim** made against **you** and reported to **us** at the time such notice was given.

**(2)** Under coverage B, if **you** have notified **us** in writing of **claim** pursuant to paragraph VII.A. above, then any **claim** that is subsequently made against **you** and reported to **us** alleging, arising out of, based upon, or attributable to the facts and circumstances alleged in the **claim**

78088 (3/03)    **COPY**                          20

AGHI005641

for which such notice has been given, or alleging any **wrongful act** that is the same as or related to any **wrongful act** alleged in the **claim** of which such notice has been given, shall be considered related to the first **claim** and made against **you** at the time the first **claim** was made against **you**, and reported to **us** at the time the first **claim** was reported to **us**.

### N. Organizational Changes

If during the **policy period**:

(1) the **named insured** merges into, consolidates with, or sells all or substantially all of its assets to any other person, entity, or group, such that the **named insured** is not the surviving entity; or

(2) another entity, person, or group of entities or persons acting in concert acquires:

    (a) ownership interests representing more than 50% of the voting, appointment or designation power for the selection of the **named insured's** board of directors, or

    (b) the right, pursuant to written contract or the **named insured's** by-laws, charter, operating agreement or similar documents, to elect, appoint or designate a majority of the **named insured's** board of directors;

then coverage under this policy shall continue until the later of the termination of the **policy period** or such other date to which **we** may agree, but only with respect to any otherwise covered **wrongful act**, **extortion claim**, **failure of security**, **criminal reward fund** or **crisis event** occurring prior to the effective time of **your** organizational change as set forth in subparagraphs (1) and (2) above. No coverage shall be provided under this policy with respect to any **wrongful act**, **extortion claim**, **failure of security**, **criminal reward fund** or **crisis event** occurring after the effective time of any such organizational change unless, no later than thirty (30) days after such effective time, **you** notify **us** in writing of the organizational change, **you** provide **us** with full particulars of the organizational change, and **you** agree to any additional premiums or amendments of the provisions of this policy required by **us**, subject to the review and acceptance by **us** of full and complete underwriting information Further, coverage after the effective time of such organizational change is conditioned on **you** having fully paid any additional premium required by **us** when due.

### O. Titles of Paragraphs

The titles of the various clauses and paragraphs of this policy and endorsements, if any, attached to this policy, are inserted solely for convenience or reference and are not to be deemed in any way to limit or expand the provisions to which they relate, and are not part of this policy.

### P. Declarations

(1) By accepting this policy, **you** agree that the statements in the application(s), security assessments and Declarations are true, are material to the risk assumed by **us**, and are **your** agreements, statements and representations. further agree that the Declarations, any security assessment, and the application form **You** the basis of this policy and are incorporated into and have become part of this policy. For the purposes of the foregoing, the term "application" includes all statements, information, representations and attachments made, prepared, or provided by  with respect to any security assessment, whether on-line or off-line, **you** conducted in connection with or involving a request for insurance under this policy.

(2) This policy is issued in reliance upon the truth of the statements and representations referenced in the foregoing.

### Q. Bankruptcy

**You** or **your** estate's bankruptcy or insolvency does not relieve **us** of **our** obligations under this policy.

### R. Net profit calculations

In determining the amount of net profit (or loss) and charges and expenses covered hereunder for the purpose of ascertaining the amount of **income loss** (and otherwise) sustained under coverage E, due consideration shall be given to the prior experience of **your business** before the beginning

AGHI005642

of the **period of recovery** and to the probable **business you** could have performed had no **material interruption** occurred. Provided, however, that such net profit (or loss) calculations shall not include, and this policy shall not cover, net income that would likely have been earned as a result of an increase in volume of **business** due to favorable business conditions caused by the impact of **computer attacks** on other businesses. All such net profit (or loss) and charges and expenses shall be calculated on an hourly basis and based on **your** actual net profit (or loss) and charges and expenses.

**S. Inspection and expert assessment rights**

**We** may make audits, inspections or surveys at any time, and **we** may give you reports on the conditions **we** find, and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability, terms, conditions, and the premiums to be charged; such inspections, surveys, reports or recommendations will be treated as confidential by **you**. **We** do not make safety inspections or undertake to perform the duty of any person or organization to provide for the safety of workers or the public. **We** do not warrant conditions or warrant that conditions comply with laws, regulations, codes, or standards. **We** do not warrant the effectiveness of any security applicable to **your computer system**. This paragraph applies not only to **us**, but also to any outside consultant who makes inspections, surveys, reports, or recommendations for the purpose of underwriting and offering insurance.

Under coverages D and E, **you** and **we** each have the right to demand that the amount of loss be determined by an expert. If either **you** or **we** make a written demand for an expert opinion, each will select a competent independent expert and notify the other of the expert's identity within twenty (20) days of the receipt of the written demand by the other party. The two experts will then select a competent, impartial umpire. The experts will then determine and state separately the amount of each **loss**. If the experts submit a written report and they agree to use the same amount, the amount agreed upon will be the amount of the **loss**. If the experts fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three will determine the amount of the **loss**. Each expert will be paid by the party selecting the expert. Other expenses of the expert and the compensation of the umpire will be paid equally by **you** and **us**. If such experts are used, **we** will still retain our right to deny coverage.

**T. Alternative Dispute Resolution**

(1) It is hereby understood and agreed that all disputes or differences that may arise with regard to the construction or interpretation of the provisions of this policy, whether arising before or after termination of this policy shall be submitted to the alternative dispute resolution ("**ADR**") process set forth in this Clause.

(2) The **insurer** and **insured** may mutually agree to elect either **ADR** process discussed below; provided, however, that in the event the **insurer** and **insured** are unable to mutually agree to a type of ADR, the **insurer** and **insured** shall participate in non-binding mediation as described below.

(3) The **insurer** and each and every **insured** agree that there shall be two choices of **ADR** process:

(a) non-binding mediation administered by any mediator to which the **insurer** and **insured** mutually agree, in which the **insurer** and any such **insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing commercial mediation rules; or

(b) arbitration submitted to an arbitration panel of three (3) arbitrators. The **insureds** shall select one (1) arbitrator, the **insurer** shall select one (1) arbitrator and said arbitrators shall mutually agree upon the selection of the third arbitrator.

(4) In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, technology, or insurance issues relevant to the matters in dispute.

(5) The dispute or differences considered by the mediator or arbitrators shall be governed by the internal laws of the State of New York; provided, however that New York law shall not apply to:

AGHI005643

(a) procurement, issuance or delivery of this policy, including cancellation or nonrenewal provisions of this policy (if any) or any other New York State regulations or requirements regarding policies issued pursuant to New York State Insurance Law; or

(b) to the determination of the availability of punitive damages, unless New York law otherwise applies.

(6) In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys' fees, costs, legal expenses or any punitive or extra-contractual sum. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least one hundred and twenty days (120) shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

(7) Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(a) of the Declarations as the mailing address for the **named insured**. The **named insured** shall act on behalf of each and every **insured** in deciding to proceed with an **ADR** process under this clause.

**U. Service of Suit**

(1) Subject to paragraph VII.T., it is agreed that in the event of failure of the **insurer** to pay any amount claimed to be due hereunder, the **insurer**, at the request of the **insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes, or should be understood to constitute, a waiver of the rights to commence an action in any court of competent **insurer's** jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, American International Specialty Lines Insurance Company, 70 Pine Street New York, NY 10270, or his or her representative, and that in any suit instituted against the **insurer** upon this contract, the will abide by the final decision of such court or of any appellate court in the event of any appeal.

(2) Further, pursuant to any statute of any state, territory, or district of the United States that makes provision therefore, the **insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

AGHI005644

ENDORSEMENT# 7

This endorsement, effective *12:01 am     July 1, 2006*                    forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by   *American International Specialty Lines Insurance Company*

### NOTICE OF CLAIM AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause VII., paragraph A., **What You Must Do in the Event of a Claim or Loss**, is deleted in its entirety and replaced with the following:

**A.     What You Must Do in the Event of a Claim or Loss**

(1)     Before coverage will apply, **you** must notify **us** in writing of:

    (a)     with respect to coverage A, any **claim** against **you** as soon as practicable after it is known by any of **your** office of the chief executive officer, office of chief financial officer, office of the chief information officer, office of risk manager or office of general counsel;

    (b)     with respect to coverage B and C, any **claim** against **you** as soon as practicable after it is known by any of **your** office of the chief executive officer, office of chief financial officer, office of risk manager or office of general counsel, but in all events before coverage will apply for any **claim you** must notify **us** in writing of such **claim** no later than either:

        (i)     within the **policy period** or Extended Reporting Period, **if** applicable; or

        (ii)     within thirty (30) days after the end of the **policy period** or Extended Reporting Period, if applicable, as long as such **claim** is reported to **us** in writing no later than thirty (30) days after the date such **claim** was first made against **you**;

    (c)     with respect to coverages D and E, **your loss** or of a circumstance that may result in a **loss** as soon as practicable, but in all events either within: the **policy period** or Extended Reporting Period, if applicable; or the policy period of any policy issued by **us** or any other AIG member company that immediately replaces this policy (or any successive and uninterrupted series of policies issued by **us** or by any other AIG member company to replace this policy).

    (d)     with respect to coverage G, any **crisis event** as soon as practicable after the **crisis event** commences, but in no event later than the end of the **policy period** or Extended Reporting Period, if applicable.

*COPY*               *END 1*

ENDORSEMENT# 1 (Continued)

This endorsement, effective *12:01 am July 1, 2006* forms a part of
policy number *672-91-00*
issued to *ALTICOR GLOBAL HOLDINGS, INC*

by *American International Specialty Lines Insurance Company*

Such notice and all other information and documentation required to be provided under this policy in the event of a **claim** or **loss** should be directed to the following address:

AIG Technical Services, Inc.
Box 1000
New York, NY 10268

(2) In addition, with respect to all coverages under this policy, **you** must also:

(a) immediately record the specifics of any **claim** and the date **you** first received such **claim**;

(b) immediately record the specifics of any **loss** or **failure of security** and the date **you** first became aware of such **loss** or **failure of security**;

(c) take prompt steps to minimize the **loss** and take reasonable steps to prevent further **loss**;

(d) at **our** request report such **loss** or **failure of security** to the FBI, CERT, ISAC or any other central reporting or investigative organization that **we** may designate;

(e) upon **our** request, furnish to **us** any and all documentation within **your** possession; and

(f) send **us** copies of all demands, suit papers, or other legal documents **you** receive, as soon as possible.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*COPY* *END 1*

AGHI005646

**ENDORSEMENT # 2**

This endorsement, effective *12:01 am    July 1, 2006*            forms a part of
policy number *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by    *American International Specialty Lines Insurance Company*

### AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows:

(1)    CLAUSE III., DEFINITIONS, PARAGRAPH I., " **computer attack**" is hereby amended by deleting the lead-in wording in its entirety and replacing it with the following:

    I.    **Computer attack** means **unauthorized access, unauthorized use**, receipt or transmission of a **malicious code**, or a **denial of service attack** that:

(2)    CLAUSE III., DEFINITIONS, PARAGRAPH I., " **computer attack**" sub-paragraph (2) is hereby deleted in its entirety and replaced with the following:

    (2)    results in the disclosure of private or confidential information stored on a **computer system**; or

(3)    CLAUSE III., DEFINITIONS, PARAGRAPH O. " **damages**," sub-paragraph (1), is hereby deleted in its entirety and replaced with the following:

    (1)    punitive, exemplary and multiple damages (where insurable by applicable law that most favors coverage for such damages)

(4)    CLAUSE III., DEFINITIONS, PARAGRAPH T. " **Extra expense**" is hereby deleted in its entirety and replaced with the following:

    T.    **Extra expense** means the expenses **you** incur that are both reasonable and necessary during the **period of recovery**:

        (1)    to reduce **your income loss**, provided that such expenses:

            (a)    are over and above the total reasonable and necessary expenses that **you** would have incurred had no **material interruption** occurred; and

            (b)    do not exceed the amount by which the **income loss** covered under this policy is thereby reduced;

        (2)    to minimize or avoid the **material interruption** and continue **your business**, which would not have been incurred had no **material interruption** occurred; provided, however, that such expenses shall not include **forensic expenses**;

*COPY*            *END 2*

AGHI005647

**ENDORSEMENT# 2   (Continued)**

This endorsement, effective *12:01 am      July 1, 2006*          forms a part of
policy number    *672-91-00*
issued to    *ALTICOR GLOBAL HOLDINGS, INC*

by      *American International Specialty Lines Insurance Company*

      (3)    as **forensic expenses**, which would not have been incurred had no **material interruption** occurred; or

      (4)    to remove specific identified **malicious code**, provided that:

      a)    the failure to remove such **malicious code** would cause or increase **your income loss**; and

      b)    the costs associated with the removal of such **malicious code** do not exceed the amount of **income loss** that such removal prevented.

      Provided, however, that with respect to any **material interruption** caused by a **failure of security** of **your dependent business**, **extra expense** shall be limited to those expenses described in above subparagraph (1) of this paragraph.

(5)    CLAUSE III., DEFINITIONS, PARAGRAPH S., " **extended interruption period**" is hereby amended by deleting the final sentence of that paragraph and replacing it with the following:

    Provided, however, any **extended interruption period** shall end no later than ninety (90) consecutive days after the date and time the **period of recovery** ends.

(6)    CLAUSE III., DEFINITIONS, PARAGRAPH EE., " **Internet media**" is hereby deleted in its entirety and replaced with the following:

    EE.    **Internet media** means: (1) any material, including **advertising**, on **your Internet** site; (2) any material created by **you** that is displayed on a third-party's **Internet** site.

(7)    CLAUSE III., DEFINITIONS, PARAGRAPH WW. " **subsidiary**," sub-paragraph (2), is amended be deleting all references to "five percent (5%)", and replacing that language with the following: "ten percent (10%)."

(8)    CLAUSE III., DEFINITIONS, PARAGRAPH CCC., " **you**, **your**, or **insured**" is hereby amended by appending the following sub-paragraph to the end of that paragraph:

    (7)    any past, present or future officer, director or trustee of the **named insured** or **subsidiary**, but only while acting within the scope of their duties as such, and in furtherance of or on behalf of the legal interests of the **named insured**;

*COPY*          *END 2*

AGHI005648

**ENDORSEMENT# *2*   (Continued)**

This endorsement, effective *12:01 am    July 1, 2006*         forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by   *American International Specialty Lines Insurance Company*

(9)   CLAUSE IV., EXCLUSIONS - CLAIMS AND LOSSES NOT COVERED, PARAGRAPH
      I, is deleted in its entirety and replaced with the following:

   I.   any **insured** failing to maintain insurance;

(10)  CLAUSE IV., EXCLUSIONS - CLAIMS AND LOSSES NOT COVERED, PARAGRAPH
      M., SUB-PARAGRAPH (2), is hereby deleted in its entirety and replaced with the
      following:

   (2)   any intentional violation of **your privacy policy**; provided, however, this
         exclusion M.(2) shall not apply to any natural person **insured**, other than
         directors, officers, trustees, principals or partners of an **insured** (or any
         equivalent position), if he or she did not know or have reason to know of,
         participate in, acquiesce to, or facilitate any of the aforementioned conduct,
         and he or she did not gain an advantage to which he or she was not entitled;
         or

(11)  CLAUSE IV., EXCLUSIONS - CLAIMS AND LOSSES NOT COVERED, PARAGRAPH
      M., SUB-PARAGRAPH (3), is hereby amended by appending the following language
      to the end of that sub-paragraph:

      Notwithstanding anything to the contrary in this exclusion M.(3), this exclusion
      M.(3) shall not apply to any natural person **insured**, other than directors, officers,
      trustees, principals or partners of an **insured** (or any equivalent position), if he or
      she did not know or have reason to know of, participate in, acquiesce to, or
      facilitate any of the aforementioned conduct, and he or she did not gain an
      advantage to which he or she was not entitled.

(12)  CLAUSE IV., EXCLUSIONS - CLAIMS AND LOSSES NOT COVERED, PARAGRAPH
      U., SUB-PARAGRAPH (2), is hereby deleted in its entirety and replaced with the
      following:

   (2)   employees (other than those referenced in sub-paragraph IV.U.(1)) or
         independent contractors employed by **you**, but only if any of the persons
         referenced in sub-paragraph IV.U.(1): (a) colluded with such employees or
         independent contractors, including without limitation, participating in,
         acquiescing to, facilitating or attempting to conceal, any of the referenced
         conduct; or (b) knew or had reason to know that any such employee or
         independent contractor was engaged or going to engage in such conduct.

*COPY*        *END 2*

AGHI005649

ENDORSEMENT# *2*   (Continued)

This endorsement, effective *12:01 am   July 1, 2006*        forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by   *American International Specialty Lines Insurance Company*

(13)   CLAUSE IV., EXCLUSIONS - CLAIMS  AND LOSSES NOT COVERED,  PARAGRAPH
X., is amended by appending the following language to the end of that paragraph:

Provided, however,  this  exclusion shall  not  apply to  any  natural person  **insured**,
other than directors, officers,  trustees, principals or  partners of an  **insured** (or any
equivalent  position), if he  or she did not  know  or  have reason to  know  of,
participate in, acquiesce to, or facilitate any of the aforementioned conduct,  and he
or she did not gain an advantage to which he or she was not entitled.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

**COPY**        **END 2**

ENDORSEMENT# 3

This endorsement, effective *12:01 am   July 1, 2006*   forms a part of policy number *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by   *American International Specialty Lines Insurance Company*

### AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows:

(1)   *CLAUSE III., DEFINITIONS,* is hereby amended as follows:

   (A)   Paragraph G., **"claim,"** is hereby deleted in its entirety and replaced with the following:

      **G.**   **Claim** means:

         (1)   a written or oral demand for money, services, non-monetary relief or injunctive relief; or
         (2)   a **suit**; or
         (3)   with respect to coverage C only, an **extortion claim**.

         Provided, however, that **claim** shall not mean, and this policy shall not cover, any action, demand, or investigation commenced by any federal, state or local regulatory body or agency for, arising out of, or alleging a violation of **HIPAA**.

   (B)   Paragraph W., **"failure of security,"** is hereby deleted in its entirety and replaced with the following:

      **W.**   **Failure(s) of security** means:

         (1)   the actual failure and inability of the **security** of your **computer system** as defined in III.UU(1), to mitigate loss from or prevent a **computer attack**, including without limitation a **computer attack** that results in the acquisition by an unauthorized person of **personal information** owned or licensed by **you**;
         (2)   with respect to coverage B only:

            (a)   physical theft of hardware or firmware controlled by **you** (or components thereof) on which electronic data is stored, by a person other than an **insured**, from a premises occupied and controlled by **you**; or

            (b)   an actual violation of **security** as defined in III.UU(2) by any of **your** employees or **supervised contractors**, which directly results in a **computer attack**;

*COPY*        *END 3*

AGHI005651

**ENDORSEMENT# *3*  (Continued)**

This endorsement, effective *12:01 am    July 1, 2006*      forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by   *American International Specialty Lines Insurance Company*

       (3)    with respect to **dependent business interruption** only, the
              actual failure and inability of the **security** of **your dependent
              business' computer system** to prevent a **computer attack**; or

       (4)    with respect to **personal information hosts** only, the actual
              failure and inability of the **security** as defined in III.UU(1) of a
              **personal information host's computer system** to prevent a
              **computer attack** that results in the acquisition by an
              unauthorized person of **personal information** owned or licensed
              by **you**.

       provided, however, in no event shall any of the perils in
       subparagraphs (1) through (5) above constitute a **failure of security** if
       resulting from any failure in project planning, operational error(s) or
       programming error(s). This policy shall not cover any **claims** arising
       out of such project planning, operational or programming error(s).

(C)    Paragraph UU., " **security**," is hereby deleted in its entirety and replaced with
      the following:

    **UU.**    **Security** means: (1) hardware, software or firmware whose function
          or purpose is to mitigate loss from or prevent a **computer attack**,
          including, without limitation, firewalls, filters, DMZ's, computer virus
          protection software, intrusion detection, the electronic use of
          passwords or similar identification of authorized users; and (2) **your**
          specific written policies or procedures for **your computer systems** that
          are specifically intended to prevent **unauthorized access** to, or
          **unauthorized use** of, **your computer system**, including without
          limitation, the theft of a password or access code by non-electronic
          means.

(D)    Paragraph BBB., **"wrongful acts,"** sub-paragraph (1), is hereby amended by
      appending the following to the end of that sub-paragraph:

    (d)    a **HIPAA violation**.

(E)    Paragraph BBB., **"wrongful acts,"** sub-paragraph (2), is hereby deleted in its
      entirety and replaced with the following:

    (2)    with respect to coverage B only, any actual or alleged breach of duty,
          neglect, act, error or omission that results in:

*COPY*        *END 3*

AGHI005652

**ENDORSEMENT# 3**   **(Continued)**

This endorsement, effective *12:01 am    July 1, 2006*          forms a part of
policy number   *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by      *American International Specialty Lines Insurance Company*

   (a)   a **failure of security** as provided in subparagraphs (1) or (2) of
         the definition of **failure of security**; or

   (b)   **your** failure to disclose a **failure of security** as defined in
         subparagraph (1), (2) or (4) of the definition of **failure of
         security**, in violation of '1798.82(a)  of the California Civil
         Code (as amended); or

   (c)   a **HIPAA violation**.

(2)   *CLAUSE III., DEFINITIONS,* is hereby amended by adding the following definitions to
      the end of that Clause:

**AM- A.Personal information** shall have the same meaning as that term is defined in
'1798.82(e) of the California Civil Code (as amended);

**AM-B. Personal information host(s)** means any person or entity that:

   (1)   stores or maintains computerized data on **your** behalf that contains
         **personal information**, which is owned or licensed by **you**; and

   (2)   with whom **you** have entered into a fully executed written contract
         with provisions that expressly require such person or entity to:

      (a)   provide notice to **you** of any "breach of the security of the
            system" immediately following discovery of such "breach of
            the security of the system," as required under '1798.82(b) of
            the California Civil Code (as amended);

      (b)   fully hold **you** harmless, defend and indemnify **you** for any
            **claims** or liability arising out of or related to any actual or
            alleged "breach of the security of the system" or violation of
            '1798.82 of the California Civil Code, *et. seq.* (as amended);
            and

      (c)   purchase network security liability insurance to cover **damages**
            and **claims expenses** related to **claims** arising out of or related
            to any actual or alleged "breach of the security of the system"
            or violation of '1798.82 of the California Civil Code, *et. seq.*
            (as amended).

*COPY*          *END 3*

AGHI005653

ENDORSEMENT# *3* **(Continued)**

This endorsement, effective *12:01 am    July 1, 2006*    forms a part of policy number *672-91-00* issued to  *ALTICOR GLOBAL HOLDINGS, INC*

by    *American International Specialty Lines Insurance Company*

**AM-C.** **Supervised contractors** means any independent contractor supervised by **your** employees and working on **your** behalf, which has agreed in writing to abide by **your** specific written policies or procedures for **your computer systems** that are specifically intended to prevent **unauthorized access**

**AM-D.** **HIPAA** means Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) and the rules and regulations promulgated thereunder as they currently exist, and as amended;

**AM-E.** **HIPAA individual** means any individual who: (1) is the subject of **HIPAA Information assets** provided to **you**; and (2) who is authorized to access the **HIPAA Information assets** provided to **you**.

**AM-F.** **HIPAA information assets** means protected health information as defined under **HIPAA** (45 CFR 164.501) which is electronically stored on or transmitted by **your computer system**.

**AM-G.** **HIPAA violation** means:

(1)    with respect to Coverage A, any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness or other violations of privacy laws, arising out of the unauthorized display of **HIPAA information assets**;

(2)    with respect to Coverage B, a **failure of security** as defined in sub-paragraphs III.UU(1) and III.UU(2) resulting in the : (1) **unauthorized use** of or **unauthorized access** to **HIPAA information assets**; (2) unauthorized electronic disclosure of **HIPAA information assets** by **you**; (3) injury to **HIPAA information assets**; or (4) inability of a **HIPAA individual** to gain access to **HIPAA information assets** stored on **your computer system**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

*COPY*        *END 3*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

AGHI005654

ENDORSEMENT# 4

This endorsement, effective *12:01 am    July 1, 2006*            forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by    *American International Specialty Lines Insurance Company*

## EMPLOYEE CLAIMANT IDENTITY THEFT ENDORSEMENT

In consideration of the premium charged,  subject to all of the  terms and conditions of the
policy, it is hereby understood and agreed that the policy is amended by deleting paragraph
IV.S in its entirety and replacing it with the following:

**S.**      against **you** that is brought, directly or indirectly, by or on behalf of:

any **insured** except:

(a)      as described in subparagraph III.CCC.(6);  or

(b)      as described in subparagraph III.CCC.(3)("Employee Claimant"), but  only: (i)
with respect to **claims** for **wrongful act(s)** resulting in **identity theft** that arise
out of  an otherwise  covered  **failure  of  security**; and  (ii) if such Employee
Claimant did not commit, participate in or contribute to such **wrongful act(s)**;

any entity that is owned, managed or operated,  directly or indirectly, in whole or  in
part, by **you**;

any parent  company,  subsidiary,  director, officer,  partner,  trustee,  successor  or
assignee of  **yours**, or anyone affiliated  with **you**  or  such business  entity through
common majority ownership or control; or

any independent contractor  supplying material  or services  to **you**, but,  as regards
such independent  contractor,  this  exclusion applies  only  with respect to **claims**
involving disputes over  the  ownership  or exercise of  rights in  material or  services
supplied.

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

COPY            END 4

AGHI005655

**ENDORSEMENT# 5**

This endorsement, effective *12:01 am    July 1, 2006*                    forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by   *American International Specialty Lines Insurance Company*

### COMPUTER CRIME COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows:

(1)     Unless otherwise set forth, the terms and conditions contained in Part A - Computer Theft Coverage of this Endorsement shall apply only to coverage extended by virtue of this Endorsement.  Unless otherwise stated the terms, conditions, and exclusions of the policy to which this Endorsement is endorsed also apply to the coverage extended by virtue of this Endorsement.  The coverage provided under this Endorsement is provided on a **difference in conditions** basis.

(2)     *CLAUSE I., PARAGRAPH D., Information Asset Coverage* is hereby deleted in its entirety and replaced with the following:

   **D.    Information Asset and Computer Crime Coverage**

      (1)     **We** shall pay **you** the actual **information asset loss, in** excess of the applicable **Retention,** which **you** sustain, resulting directly from **injury** to **information assets** first occurring during the **policy period.** Such **information asset loss** must first occur during the **policy period** and result from a **failure of security** of **your computer system** that also first occurs during the **policy period.**

      (2)     **We** will pay **you** the **computer crime loss, in** excess of the applicable **Retention,** which **you** sustain, resulting directly from **computer theft.** Such **computer theft** must first occur and be **discovered** during the **policy period,** and result from a **failure of security** that also first occurs during the **policy period.**

(3)     *CLAUSE III., DEFINITIONS,* is hereby amended by adding the following definitions to the end of that Clause:

   **CR-A. Computer crime loss** means the amount of **money** or **securities** lost as the result of **computer theft,** as valued pursuant to the paragraph VII.CR-A. (Valuation of Money and Securities) of this Endorsement. This definition is subject to the limitations set forth in the Definition of **loss.**

   **CR-B. Computer theft** means the intentional and unlawful misappropriation of **money** or **securities** from **you** resulting directly from the use of **your computer system** by an unauthorized person.

*COPY*              *END 5*

AGHI005656

**ENDORSEMENT# 5   (Continued)**

This endorsement, effective *12:01 am      July 1, 2006*      forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by     *American International Specialty Lines Insurance Company*

> **CR-C. Difference in conditions** means subject to all other terms and conditions set forth herein, coverage applies when the covered **computer crime loss,** perils definitions, and/or conditions set forth herein are broader in meaning or scope than those of an **Insured's** valid and collectible other insurance; and only in that event, does this insurance become primary insurance.   In all other circumstances, this insurance shall be excess over an **Insured's** valid and collectible other insurance.

> **CR-D. Losses discovered** or **discovered** means the actual time at which **your** General Counsel, Risk Management Department, management of the IT/IS Department, Internal Audit Department, officer or director became aware that **computer theft** has occurred.

> **CR-E. Money** means the following which are owned by **you** or in **your** possession: (1) currency, coins and bank notes in current use and having a face value; (2) travelers checks, registered checks and money orders held for sale to the public; (2) and electronic cash equivalents of (1) and (2).

> **CR-F. Securities** means the following which are owned by **you** or in **your** possession: shares, stock, debentures, debenture loan stock, bonds, and any other security of any description and interests in a security, whether the foregoing is certificated or uncertificated. **Securities** do not include **money.**

(4)   *CLAUSE III., DEFINITIONS,* is hereby amended by amending the following definitions:

> (A)   *PARAGRAPH III.W., " failure of security"* is amended by adding the following sub-paragraph to the end of that definition:

> For purposes of Coverage D(2), **failure(s) of security** means, the actual failure and inability of the **security** of **your computer system** as defined in III.UU(1), to mitigate loss from or prevent a **computer theft.**  However, in no event, shall the above constitute a **failure of security** if resulting from operational errors, unintentional programming errors, or any failure in project planning. The rest of the definition for **failure of security** in the policy shall not apply to Coverage D(2)

*COPY*          *END 5*

AGHI005657

**ENDORSEMENT# 5** **(Continued)**

This endorsement, effective *12:01 am    July 1, 2006*        forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by     *American International Specialty Lines Insurance Company*

    (B)    *PARAGRAPH III.X., "first inception date"* is amended by adding the following to the end of that definition:

        For purposes of Coverage D(2), **first inception date** means the inception  date of the first computer or electronic  crime, computer theft or computer  crime, policy or endorsement issued by **us** or any other  member  company of American International Group, Inc. ("AIG") to the **named  insured** and continually replaced by **us** or any other AIG member company until the inception date of this   policy that provides substantially equivalent  coverage as is provided by this endorsement

    (C)    *PARAGRAPH III.II.,  " loss,"* the lead-in paragraph, is deleted in  its entirety and  replaced with the following:

        **II.**    **Loss** means the total sum of any **damages, claim expenses, extortion monies, information asset loss, business interruption loss, criminal reward fund, computer crime loss** and **crisis expenses**. However, " los s," " damages," " claim expenses," " extortion monies,"  " information asset loss,"  " business interruption loss,"  " criminal reward fund," " computer crime loss" and  " crisis expenses" shall not mean, and  this policy shall not cover:

(5)    *CLAUSE IV., EXCLUSIONS - CLAIMS AND LOSSES NOT COVERED,* is hereby amended by adding the following to the end of that Clause

With respect to coverage  D(2) only, **we** will  not cover any  **computer crime loss** or **loss** arising out of or resulting, directly or indirectly, from:

**CR-A.** forged, altered  or fraudulent negotiable  instruments, **securities, money,** documents, or written  instruments used  as source  documentation, or manually keyed into **your computer system;**

**CR-B.** indirect or consequential **loss,** including without limitation potential income or lost business opportunities;

**CR-C.** any **loss** resulting from  the unauthorized  access or use of your  telephone system;

*COPY*        *END 5*

AGHI005658

ENDORSEMENT # 5 (Continued)

This endorsement, effective *12:01 am     July 1, 2006*     forms a part of
policy number     *672-91-00*
issued to     *ALTICOR GLOBAL HOLDINGS, INC*

by     *American International Specialty Lines Insurance Company*

CR-D. any **loss** resulting directly or indirectly from the use or purported use of credit, debit, charge, access convenience, customer identification or other cards; or

With respect to coverage D(2) only, **we** will not cover any **computer crime loss** or **loss**:

CR-E. the proof which as to its existence or amount is solely dependent on:

  (1)     an inventory computation or comparison; or
  (2)     a profit and loss computation or comparison;

(6)     *CLAUSE VII., OTHER PROVISIONS AFFECTING COVERAGE,* is hereby amended by appending the following to the end of that Clause:

**CR-A. Valuation of Money and Securities**

  (1)     Covered c **omputer crime loss** consisting of lost **money** shall be valued at the face value of the lost **money** less the value of any **money** recovered after the **computer theft**. With respect to **money, we** may choose at our sole discretion to pay **computer crime loss** in the currency of the country to which the **computer theft** relates or in the United States dollar equivalent determined by the rate of exchange as published by the *Wall Street Journal* on the day the **computer theft** was **discovered**.

  (2)     Covered **computer crime loss** consisting of lost **securities** shall be valued at the market value of said **securities** as published by the *Wall Street Journal* at the close of business on the day the applicable **computer theft** was **discovered**, less the value of any **securities** recovered as determined by the value published in the *Wall Street Journal* at the close of business on the day said **securities** were recovered; provided, however, in our sole discretion, **we** may pay the:

    (a)     value of such **securities** or replace them in kind, in which event **you** must assign to us all **your** rights, title and interest in and to such securities; or

    (b)     cost of any lost **securities** bond required in connection with issuing duplicates of the **securities**.

*COPY*          *END 5*

AGHI005659

**ENDORSEMENT# 5     (Continued)**

This endorsement, effective *12:01 am     July 1, 2006*          forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by     *American International Specialty Lines Insurance Company*

In no event shall the  value of **securities** be  determined based on loss or change  of market  value  because of  **your** inability to  sell  or buy **securities** as the result of the **computer theft**.

### CR-B. Limit of Liability

Regardless of  the number  of  years this  insurance remains  in  force or  the number of premiums paid, no limit of liability  cumulates from year to year or period to period.  Coverage for **loss** as  is provided under this Endorsement is part  of  and  not  in  addition  to  the  applicable  **sublimit(s) of  liability** for coverage D and the **policy limit of liability** as set forth in the policy.

### CR-C. Limited Benefit

This coverage is  for **your** benefit only.  It provides  no rights  or benefits to any third party.

### CR-D. Recovered Money or Securities

In the event **you**  recover any **money** or  **securities** that was the  subject of a covered **computer  theft**, after  we  have  paid  **you**  for **computer  crime  loss** related to such **money** or **securities**,  **you** shall reimburse **us** the  amount paid by **us** for such recovered **money** or **securities**  within thirty (30) days of such recovery.

### CR-E. Difference in Conditions

Notwithstanding paragraph  VII.F (Other  Insurance), coverage for **computer theft** is  specifically  written  on  a  **difference  in  conditions**  basis. It  is  a condition  of  this  policy  that  all  other  applicable  insurance  policies  or replacements thereof  in  force at  the  inception  of  this policy  will be maintained  in  full  force  and  effect  during  the  term  of  this  policy  or notification will be made to us within ninety (90) days of such change. In the event of  such  notification, **we**  shall  have  the  right to  modify **this**  policy or make adjustments to  the premium  if **we** reasonably  deem that  such policy changes or premium  adjustments are  necessary, and such  modifications or adjustments shall apply to  all **loss discovered** made after the  effective time of the failure to maintain.

*COPY*          *END 5*

AGHI005660

ENDORSEMENT# 5 (Continued)

This endorsement, effective *12:01 am    July 1, 2006*            forms a part of
policy number  *672-91-00*
issued to   *ALTICOR GLOBAL HOLDINGS, INC*

by    *American International Specialty Lines Insurance Company*

(7)     *CLAUSE VII., OTHER PROVISIONS AFFECTING COVERAGE,* is hereby amended by
deleting sub-paragraph VII.L(3) and replacing it with the following:

(3)    **Coverage D and E Extended Reporting Period**

If **we** or the **named insured** shall cancel this policy or refuse to replace this
policy, **you** shall have up to one (1) year following the effective date of such
cancellation or refusal to discover and report any covered **loss** under
coverages D(1) and E.

Under coverage D(2), if **we** or the first **Named Insured** refuses to renew this
policy, the first **Named Insured** shall have the right, upon the payment of an
additional premium of 75% of the annual premium as set forth in the
Declarations, to a period of ninety days (90) following the effective date of
such non-renewal (herein referred to as the "Optional Extended Reporting
Period") in which to give us written notice to **us** of any otherwise covered
**computer theft** that first occurred and was **discovered** by **you** during the
**policy period**. The rights contained in this paragraph shall terminate,
however, unless **we** receive written notice of such election, together with
the additional premium due, within thirty (30) days of the effective date of
non-renewal. This paragraph shall not apply to any cancellation resulting
from non-payment of premium. The limit of liability for the Extended
Reporting Period shall be part of, and not in addition to, the **policy limit of
liability** and applicable **sublimits of liability** for Policy Period. A renewal with
different terms or premium shall not be a refusal to renew this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*COPY*          *END 5*

AGHI005661