UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTICOR GLOBAL HOLDINGS, INC.,
AMWAY CORP., ALTICOR, INC., and
AMWAY INTERNATIONAL, INC.,

    Plaintiffs/Counter-Defendants,

v.

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY (n/k/a AIG Specialty
Insurance Company),

    Defendants, and

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

    Defendant/Counter-Plaintiff.
_____/

CASE NO. 1:17-CV-388

HON. ROBERT J. JONKER

## OPINION AND ORDER

    This insurance coverage dispute is before the Court on parties' penalty interest briefing. The Court has previously ruled that under Defendant American International Specialty Lines Insurance Company's ("AISLIC") insurance policy, Plaintiffs Alticor Global Holdings, Inc., Amway Corp., Alticor, Inc., and Amway International (collectively, "Amway")[1] are entitled to a reimbursement for settlement and defense costs incurred in an underlying lawsuit. The briefs now before the Court build upon the Court's prior rulings on the parties' Phase One and Phase Two motions for summary judgment or partial summary judgment. Amway contends that it is entitled

---

[1] Plaintiff Alticor Global Holdings, Inc. is a holding company, and Plaintiffs Amway Corp., Alticor Inc., and Amway International are among its subsidiaries. For ease of reference, this Opinion refers to all four plaintiffs, individually and collectively, as "Amway."

to a total of $16,021,853 in penalty interest under Michigan Compiled Law § 500.2006. (ECF No. 256.) AISLIC argues that Amway is only entitled to a total of $7,075,241.92 in penalty interest. (ECF No. 257.)

## BACKGROUND

### A. The 1996 Litigation and 1998 Settlement

The precursor to this case is copyright litigation dating back to 1996 (the "1996 Litigation").[2] The 1996 Litigation transpired after a group of entertainment companies (the "Record Companies") sued Amway and approximately fifty Amway Independent Business Owners ("IBOs") in the U.S. District Court for the Middle District of Florida for copyright infringement. The parties to the 1996 Litigation eventually settled the dispute under a Settlement and Release Agreement (the "1998 Settlement"). The 1998 Settlement resolved claims for past infringement but did not release Amway or IBOs from potential claims of infringement arising in the future. The 1998 Settlement established a framework for addressing potential future claims, and the U.S. District Court for the Middle District of Florida retained jurisdiction to enforce the 1998 Settlement.

### B. The 2012 Letter and Internet Video Claim

Fourteen years later, in November 2012, the Record Companies sent Amway a letter accusing it of infringing hundreds of copyrighted sound recordings (the "2012 Letter").[3] In 2013, the Record companies expanded the allegations, ultimately accusing Amway of direct, contributory, or vicarious liability for the infringement of hundreds of sound recordings used in

---

[2] A detailed description of the 1996 Litigation and ensuing settlement appears in the Court's earlier Opinion, ECF No. 110, at PageID.6497-98.

[3] A detailed description of the 2012 Letter and the Internet Video Claim likewise appears in the Court's earlier Opinion, ECF No. 110, at PageID.6498-99.

over 1,000 different videos uploaded to Internet sites (the "Internet Video Claim"). The 2012 Letter explicitly invokes the framework for dispute resolution provided in the 1998 Settlement:

> This letter constitutes notice pursuant to Paragraph 13.2 of the Settlement and Release Agreement that [the Record Companies] reasonably believe that activities or conduct on the part of Amway Corporation and distributors of Amway products, as well as various individuals and entities associated with them, infringe copyrights and other rights in sound recordings owned or controlled by one or more of [the Record Companies].

(ECF No. 71-9, PageID.3085) (bold and italics omitted).

### C. Amway's Coverage Requests

Amway tendered the 2012 Letter to AISLIC on May 21, 2013. Amway sought coverage from AISLIC under a policy entitled "AIG net Advantage Security – Internet & Network Security Insurance" (the AISLIC Policy"). AISLIC denied coverage in July 2013 under a series of such policies.[4] AISLIC detailed multiple reasons for denying coverage, including, without limitation, that (1) coverage does not extend to infringements on websites other than those of Amway and its distributors or licensees; (2) Exclusion J bars coverage for claims, wrongful acts, or loss arising out of the 1996 Litigation; and (3) Exclusion P bars coverage for claims arising out of any circumstance or occurrence if claims could have been reported under a preceding policy. (ECF No. 71-14.) AISLIC reaffirmed the denial of coverage twice more, each time for the same reasons the initial denial provided. (ECF No. 71-15, 16.)

### D. Florida Litigation

In April 2014, Amway filed suit against the Record Companies in the United States District Court for the Middle District of Florida, alleging breach of the 1998 Settlement. On March 6, 2015, the Record Companies filed counter-claims for breach of contract and direct, contributory,

---

[4] In this lawsuit, Amway contends that it is entitled to coverage under the AISLIC Policy with effective dates from July 1, 2006 – July 1, 2007, extended by endorsement to July 20, 2007, Policy No. 672-91-00.

3

and vicarious copyright infringement (the "2015 Counter-claim" or "Counter-claim"). The Record Companies alleged that Amway or its affiliates uploaded to the Internet 1,392 infringing videos from 2006 to 2016. The parties ultimately settled the Florida Litigation, and the case was dismissed with prejudice in January 2017. According to the settlement, Amway paid a total of $7,562,500 to the Record Companies to resolve the Internet Video Claim. It first paid $7,478,500 on December 27, 2016 and paid another $84,000 on December 18, 2018. Amway incurred $6,653,705.79 in defense costs from November 27, 2012, the date the Record Companies first gave notice, to March 6, 2015, the date the Record Companies filed their Counter-claim. Since the filing of the Counter-claim, Amway incurred an additional $16,513,882.41 in defense costs.

### E.   Notification of Settlement and Defense Costs

Amway first notified AISLIC of the Counter-claim and settlement in a letter on February 22, 2017. The letter stated the settlement amount and that Amway had incurred "approximately $22 million in defending the claim." AISLIC responded on February 28, 2017, asking for settlement documents and "a detailed description of the defense costs incurred to date in connection with the defense of this claim[.]" (ECF No. 258-7, PageID.12887.) On March 23, 2017, Amway sent AISLIC "a spreadsheet summary of Amway's claimed legal fees and costs, along with the executed settlement agreements[.]" (ECF No. 257, PageID.12825.) After receiving the documents, AISLIC informed Amway that it still would not cover the costs. Amway filed this lawsuit, seeking coverage and reimbursement, on April 27, 2017. On August 8, 2017, Amway provided AISLIC with the actual legal fee invoices through discovery.

### F.   The Court's Phase One Order

This lawsuit arises out of AISLIC's denial of coverage in connection with the Internet Video Claim. In Phase One of this case, the Court addressed a limited range of issues framed by

the parties' motions and made several rulings as a matter of law. In particular, on March 22, 2019, the Court determined that:

1. Exclusions J and P of the AISLIC Policy do not as a matter of law preclude all coverage for the Internet Video Claim(s);

2. The 2015 Counter-claim, and not the 2012 Letter, is the trigger of AISLIC's duty to defend under the AISLIC Policy;

3. The National Union Policy does not as a matter of law preclude coverage for advertisements posted by IBOs, or other third parties, rather than by Amway itself; and

4. The National Union Policy does not as a matter of law require pro rata apportionment of Amway's claimed recovery over all National Union Policies on the risk.

### G. Phase Two Order

In Phase Two, the Court ruled on parties' cross motions for summary judgment or partial summary judgment on several remaining coverage and related damages issues. On February 7, 2022, the Court found:

1. Only the July 2006 to July 2007 AISLIC policy is triggered because all claims of the Internet Video Claim(s) telescope to the first occurrence under its policy;

2. ACE fronting Policies do not constitute "Other Insurance" within the meaning of the AISLIC Policy;

3. AISLIC did not waive its right to rely on the plain language of its insuring agreement limiting its defense obligation to "suits";

4. AISLIC waived its right to challenge the reasonableness of Amway's actual defense costs, and there is no triable issue of reasonableness anyway on the present record;

5. Amway is entitled to reimbursement from AISLIC for the total settlement and defense costs since the date of the counter-claim, which totals to $24,076,382.41.

At that time, the Court did not resolve whether Amway is entitled to any interest, including penalty interest under M.C.L. § 500.2006. The Court ordered the parties to submit additional briefing on the issue. Now before the Court are parties' briefs on penalty interest.

## LEGAL STANDARDS AND DISCUSSION

### A.   Penalty Interest Under M.C.L. § 500.2006

#### *1. Legal Standards*

In a diversity case, state law governs the award of prejudgment interest, while federal law governs post-judgment interest. *FDIC v. First Heights Bank*, *FSB*, 229 F.3d 528, 542 (6th Cir. 2000). Under Michigan law, penalty interest is awarded in accordance with Michigan Complied Laws § 500.2006. Section 1 provides:

> A person must pay on a timely basis to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

MICH. COMP. LAWS § 500.2006(1). "The purpose of the statute is to penalize insurers who fail to timely pay benefits." *Stryker Corp. v. XL Ins. Am.*, 576 Fed. Appx. 496, 504 (6th Cir. 2014) (citation omitted) (*Stryker III*). Under Section 4:

> If benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract. If the claimant is a third party tort claimant, the benefits paid bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith, and the bad faith was determined by a court of law.

MICH. COMP. LAWS § 500.2006(4). Michigan case law has reinforced the distinction between an insured claimant and a third-party claimant "and [has] emphasized that first party insurance claimants need not demonstrate that the claim was 'not reasonably in dispute' in order to recover the 12% interest." *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 360 (6th Cir. 2012) (*Stryker II*).

6

Section 3 further explains the "satisfactory proof of loss" requirement and states "[a]n insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days." MICH. COMP. LAWS § 500.2006(3). If an insurer fails "to specify in writing what constitutes 'a satisfactory proof of loss' no later than 30 days after receipt of an insurance claim, . . . the 'proof of loss' requirement of M.C.L. § 500.2006(4)" is excused. *Michigan First Credit Union v. Cumis Ins. Soc. Inc.*, No. 05-CV-74423, 2009 WL 2245128, at *2 (E.D. Mich. July 27, 2009), *aff'd*, 641 F.3d 240 (6th Cir. 2011) (citing *Medley v. Canady*, 126 Mich. App. 739, 744-45, 337 N.W.2d 909 (1983)).

Though the terms "claim" and "satisfactory proof of loss" are not defined by the statute, "a notice of a lawsuit against the insured, tendered to the insurer, ordinarily constitutes a claim for the purpose of the statute." *City of Holland v. Fed. Ins. Co.*, No. 1:13-CV-1097, 2017 WL 5713950, at *12 (W.D. Mich. Mar. 7, 2017). However, for proof of loss on defense costs, "[n]otice of [a] lawsuit [does] not provide any proof of loss, e.g., amounts paid by Plaintiffs to their attorneys." *Id.* In *City of Holland*, the insurance company received proof of loss when the insured provided invoices for the legal expenses, not when the insured provided the company notice of the lawsuit. *Id.*

All prejudgment interest, including penalty interest, runs until federal post-judgment interest provisions are triggered. *Stryker II*, 735 F.3d at 361. Federal post-judgment interest is awarded under 28 U.S.C. § 1961. It provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

7

28 U.S.C. § 1961(a) (cleaned up).  In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 836 (1990), the Supreme Court held that the trigger date for the accrual of post-judgment interest is the date of the judgment in which damages have "been ascertained in a meaningful way." Since the Supreme Court's decision in *Kaiser*, "the Sixth Circuit has applied the 'meaningful ascertainment [test]' for purposes of determining when post-judgment interest should begin." *Whitesell Corp. v. Whirlpool Corp.*, 496 Fed. Appx. 551, 557 (6th Cir. 2012).

The Sixth Circuit has held that "judgment" is "any judgment that is not entirely set aside." *Skalka v. Fernald Env't Restoration Mgmt. Corp.*, 178 F.3d 414, 429 (6th Cir. 1999).  Plaintiffs are "entitled to post-judgment interest from the date of entry of the initial, partial judgment on the . . . contract claims, even though that judgment [is] not yet appealable."  *Id.*  The Sixth Circuit further "held that for interest to begin running under § 1961, there must be a judgment that unconditionally entitles a party to fees or damages, even if the amount of the damages has not been quantified."  *Advanced Accessory Sys., LLC v. Gibbs*, 71 F. App'x 454, 463 (6th Cir. 2003) (internal quotation omitted).  In *Stryker II*, penalty interest ran until a final judgment opinion, denying defendant's motion for summary judgment, "as it contained findings relating to the amount of pre-judgment interest that [a later opinion] did not completely vacate."  735 F.3d at 361. Though the district court had previously issued an opinion on coverage, holding that defendant's policy covered the claims against plaintiff, the coverage opinion was not a judgment.  *Id.* at 353. Instead, the final judgment opinion was a "judgment" because it held that defendant was responsible for all of plaintiff's losses.  *Id.* at 354.  Later orders on appeals of the final judgment also did not constitute "judgment" as they did not vacate the earlier final judgment.  *Id.* at 361-62.

Similarly, a district court found that an opinion and order granting partial summary judgment constituted a "judgment" because the court awarded plaintiff $25,093,533 on one issue,

8

the decision was not later set aside, and damages were ascertainable. *Fed.-Mogul Corp. v. Ins. Co. of State of Pennsylvania*, No. 12-12005, 2017 WL 2274489, at *2, 8 (E.D. Mich. May 25, 2017).

### 2. Discussion

#### a. Penalty Interest on Settlement

##### i. Starting Date

Amway contends that penalty interest on the settlement monies runs from the date the settlement was paid to the date the Court enters this order on penalty interest. Under those terms, penalty interest on the first settlement payment of $7,478,500 runs from February 25, 2017, 60 days after it was paid on December 27, 2016, to May 22, 2022, the assumed date of this opinion. Penalty interest on the remaining settlement amount of $84,000 runs from February 16, 2019, 60 days after it was paid on December 18, 2018, to the date of this opinion. Amway argues that it is entitled to $4,703,464 and $32,919 in penalty interest on the settlement amounts.

AISLIC argues that penalty interest on the entire settlement amount runs from May 23, 2017, 60 days after it received the executed settlement documents, up until February 7, 2022, the date the Court issued its Phase Two order. The total amount of penalty interest on this theory is $4,272,812.50.

The Court agrees with AISLIC on this issue. The Record Companies' Counter-claim qualifies as a "claim" under M.C.L. § 500.2006. However, penalty interest runs from "a date 60 days after satisfactory proof of loss," not from the original date of the claim. M.C.L. § 500.2006(4). Amway did not notify AISLIC of the Counter-claim and settlement amount until its February 22, 2017 letter. AISLIC then requested and ultimately received copies of the settlement documents themselves. Once AISLIC learned of the Counter-claim and received the

9

settlement documents as proof of loss on March 23, 2017, penalty interest began to run 60 days later.

Amway argues that AISLIC waived the "satisfactory proof of loss" requirement because it did not specify in writing the materials Amway needed to send after tendering the Record Companies' demand letters on May 21, 2013. However, the demand letters are not "notice of a lawsuit against the insured." *City of Holland*, 2017 WL 5713950, at *12. Amway was not entitled to benefits under AISLIC's insurance policy at that point, so AISLIC's lack of a request for more information at that time does not constitute a waiver. Thus, the demand letters are immaterial to the issue of "satisfactory proof of loss." AISLIC also did not waive the "satisfactory proof of loss" requirement when it received the February 22, 2017 letter. Rather, six days later, AISLIC requested that Amway provide the settlement agreements. On March 23, 2017, Amway complied with AISLIC's request. The receipt of the agreements constituted "satisfactory proof of loss," and AISLIC was obligated to reimburse Amway for the settlement monies 60 days later, on May 22, 2017, or pay penalty interest.[5]

## ii. Ending Date

Penalty interest ends when federal post-judgment interest begins. In this case, post-judgment interest begins with the February 7, 2022 Phase Two Order. In its Phase Two Order, the Court resolved certain damages issues that could have limited recovery from AISLIC and found that "Amway is entitled to reimbursement from AISLIC for the total settlement and defense costs since the date of the counter-claim, which totals to $24,076,382.41." The Order "unconditionally entitles" Amway to a reimbursement of all settlement monies and ascertains damages on the settlement monies "in a meaningful way." *Advanced Accessory*, 71 F. App'x at 463; *Kaiser*, 494

---

[5] AISLIC calculated 60 days from March 23, 2017 to be May 23, 2017, but the Court finds that the correct date is May 22, 2017.

U.S. at 836. The Order has not been vacated, and the damages remain the same. The February 7, 2022 Order allowed the parties to assess the damages AISLIC owed Amway and started the running of post-judgment interest.

Amway argues that the Court's present Order ends penalty interest because with this Order, the Court will enter judgment as to the total amount of damages, including penalty interest. The Court understands the practical reality that a judgment creditor cannot collect on a judgment, or require a surety bond, before entry of a final, appealable judgment. But under well-established law previously discussed, the Court's Order on penalty interest is not relevant to determining the end date of penalty interest on the settlement. What matters is when damages on the settlement amount were meaningfully ascertained even if that is before the entry of a final, appealable judgment. Meaningful ascertainment occurred with the February 7, 2022 Order.

Accordingly, the penalty interest on the entire settlement amount of $7,562,500 started accruing on May 22, 2017, 60 days after AISLIC received the settlement agreements on March 23, 2017. The penalty interest stopped accruing on February 7, 2022, the date of the Court's Phase Two Order. The total penalty interest is $4,281,410.96.[6]

### b. Penalty Interest on Defense Costs

Amway argues that the penalty interest on $16,013,882.41[7] of defense costs began to accrue on May 5, 2015, 60 days after the Record Companies' filed their Counter-claim, and ends the date the Court enters this opinion. Amway says penalty interest totals $11,285,470. AISLIC

---

[6] ($7,562,500 x .12)/365 x 1,722 days = $4,281,410.96. The Court uses a daily rate calculation to determine the penalty interest instead of AISLIC's monthly rate calculation. *See Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 252 (6th Cir. 2011) ("[W]e hold that the district court [which used a daily rate calculation] correctly applied M.C.L. § 500.2006 in calculating the interest award.")

[7] Parties agree that the recoverable defense costs should be reduced by $500,000 to account for the self-insured retention. The Court finds that AISLIC is required only to reimburse Amway for $16,013,882.41 of defense costs and corrects its prior rulings accordingly.

11

maintains that penalty interest on defense costs accrued from October 8, 2017, 60 days after it received Amway's invoices, to March 22, 2019, the date the Court ruled that AISLIC's duty to defend was triggered. Under AISLIC's calculations, penalty interest totals $2,802,429.42. The Court sees it differently than either party.

i. Starting Date

AISLIC was first notified of the Counter-claim and settlement on February 22, 2017. Following the notification, AISLIC asked for "a detailed description of the defense costs incurred to date in connection with the defense of this claim[.]" (ECF No. 258-7, PageID.12887.) AISLIC received just that on March 23, 2017. Amway sent AISLIC "a spreadsheet summary of Amway's claimed legal fees and costs." (ECF No. 257, PageID.12825.) AISLIC did not demand actual invoices when it received the spreadsheet summary. It accepted the spreadsheet as a reasonable response to its request and did not make further inquiries. AISLIC cannot now claim that the spreadsheet it received on March 23, 2017 was insufficient and that it was not until it received the invoices themselves through discovery that Amway provided satisfactory proof of loss. To constitute "satisfactory proof of loss," materials only need to detail the costs incurred and meet the insurer's written demand. It is not required that actual invoices be provided unless the insurer demands the invoices in writing within 60 days of being notified of a claim. Since AISLIC only requested a detailed description and then accepted the spreadsheet summary without further inquiry, the spreadsheet was "satisfactory proof of loss." Thus, the penalty interest started to accrue on May 22, 2017.

Amway argues that the penalty interest started to accrue 60 days after the Record Companies' filed the Counter-claim. Its calculations then use individual start dates for each invoice, amounting to 60 days after each invoice was issued. The Amway start dates are incorrect.

12

The start date under the penalty interest statute is in relation to when AISLIC received notice of the defense costs and satisfactory proof of loss, not when Amway received the invoices or when the Counter-claim was filed. Since AISLIC was not notified until February 22, 2017 and satisfactory proof of loss was not received until March 23, 2017, penalty interest did not start accruing until May 22, 2017.

ii. Ending Date

The penalty interest on the defense costs stopped accruing on February 7, 2022, the date of the Court's Phase Two Order. This is when AISLIC's defense cost obligation was reasonably ascertained. Amway's argument that penalty interest continues up to the date of this Order is unpersuasive. Again, post-judgment interest begins when damages were meaningfully ascertainable, which was with the Court's Phase Two Order. A "judgment" under 28 U.S.C. § 1961 does not have to be a final, appealable judgment or contain a penalty interest calculation.

AISLIC argues that post-judgment interest began accruing with the earlier Phase One Order on March 22, 2019 since the Court then found that AISLIC's duty to defend was triggered. However, a determination that AISLIC had a duty to defend Amway against the Counter-claim is not a determination of damages. In the Phase One Order, the Court had not yet resolved the extent of AISLIC's obligation to reimburse Amway. It was not until the Phase Two Order that the Court addressed the damages issues, including: the Internet Video Claim telescopes into the 2006-2007 AISLIC Policy; the ACE Policies are fronting insurance and not "Other Insurance" that must be exhausted first; AISLIC waived the right to challenge the reasonableness of the defense costs but did not waive the right to rely on its policy language for an effective trigger. With these rulings, damages were ascertainable. In *Stryker II*, the penalty interest stopped accruing when the court ordered the defendant responsible for all losses, not when the court simply found plaintiff's claims

13

were covered by defendant's policy. The same is true here. It is not the Phase One Order on the general coverage issues that controls, but rather the Phase Two Order that holds AISLIC responsible for all defense costs. The total defense costs were a known quantity by the date of the Phase One Order, but the particular amount for which AISLIC was responsible was not resolved until the Phase Two decision. Thus, penalty interest for defense costs stopped accruing and post-judgment interest began accruing on February 7, 2022.

In sum, Amway is entitled to $9,066,051.12 in penalty interest on the defense costs, with an accrual period running from May 22, 2017 to February 7, 2022.[8]

### B. Prejudgment Interest Under M.C.L. § 600.6013

#### 1. *Legal Standards*

The parties have not briefed or specifically requested prejudgment interest under Michigan Complied Laws § 600.6013, but the Court notes that Section 600.6013 prejudgment interest is not discretionary and "must be applied in accordance with its plain terms." *Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913, 922-23 (6th Cir. 2000). The statute provides:

> Except as otherwise provided in subsections (5) and (7) and subject to subsection (13), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section. Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs.

MICH. COMP. LAWS § 600.6013(8). The purpose of an award under Section 6013 "is to compensate the prevailing party for delay in receiving money damages." *McCahill v. Com. Union Ins. Co.*, 446 N.W.2d 579, 586 (Mich. Ct. App. 1989).

---

[8] ($16,013,882.41 x .12)/365 x 1,722 days = $9,066,051.12.

14

However, Amway is "not entitled to interest under both the penalty statute and the standard prejudgment interest award statute." *City of Holland v. Fed. Ins. Co.*, No. 1:13-CV-1097, 2017 WL 5713950, at *13 (W.D. Mich. Mar. 7, 2017). Section 4 of M.C.L. § 500.2006 states that "[i]nterest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award." The Sixth Circuit has noted that "[t]his provision operates to prevent an insured from receiving both an award of prejudgment penalty interest under § 500.2006 and a standard prejudgment interest award under MICH. COMP. LAWS § 600.6013." *Stryker III*, 576 Fed. Appx. at 505. Thus, an award of penalty interest must be offset by a statutory prejudgment interest award. *McCahill,* 446 N.W.2d at 587-88.

Interest under M.C.L. § 600.6013 accrues from the "date of the filing of the complaint upon the defendant against whom the judgment has been entered." *Rittenhouse v. Erhart*, 380 N.W.2d 440, 463 (Mich. Ct. App. 1985). Thus, if "an amended complaint adds a defendant, upon whom prejudgment interest is to be taxed, the date of the amended complaint adding the defendant is used to calculate the interest." *Acorn Window Sys., Inc. v. Detroit Edison Co.*, No. 229496, 2003 WL 21921165, at *4 (Mich. Ct. App. Aug. 12, 2003).

Prejudgment interest under Section 600.6013 runs up until the date of a "judgment" for the purposes of federal post-judgment interest under 28 U.S.C. § 1961(a). *Venture Indus. Corp. v. Autoliv Asp, Inc.*, No. 99-75354, 2007 WL 3202821, at *2 (E.D. Mich. Oct. 30, 2007), *aff'd*, 283 F. App'x 808 (Fed. Cir. 2008) ("Thus, the date for determining the line between pre and post judgment interest is controlled by federal law.") Though prejudgment interest under Section 600.6013 generally runs until a judgment is satisfied, it is improper for state prejudgment interest to run past the judgment date when federal post-judgment interest starts accruing. *Thorn Apple Valley, Inc. v. Allianz Life Ins. Co. of N. Am.*, 70 F.3d 1273, 1995 WL 704269, at *6 (6th Cir. 1995)

15

("There can be no serious question that allowing both state and federal law to simultaneously impose separate interest rates would constitute an impermissible double recovery for the plaintiff."). Thus, the same legal standards previously articulated for federal post-judgment interest apply here. In *Advanced Accessory*, prejudgment interest under Section 600.6013 was cut off by a judgment on a jury verdict because the judgment unconditionally entitled plaintiffs to damages even though the judgment was not a final, appealable judgment and did not include indemnification damages. 71 F. App'x at 462-63.

### 2. Discussion

Here, statutory prejudgment interest under M.C.L. § 600.6013 began to accrue for the settlement and defense costs with the filing of Amway's original complaint against AISLIC on April 27, 2017. The First Amended Complaint only added plaintiffs and factual allegations and did not change or add defendants or causes of actions. Prejudgment interest on the settlement and defense costs stopped accruing with the February 7, 2022 Order. In the Order, the Court determined that Amway is unconditionally entitled to a certain amount of damages. Thus, prejudgment interest under Section 600.6013 ran from April 27, 2017 to February 7, 2022. Using the interest calculation under M.C.L. § 600.6013(8), Amway is entitled to $916,531.80[9] in prejudgment interest for the settlement monies and $1,940,793.28 for the defense costs.[10] The penalty interest amounts shall be offset by the statutory prejudgment interests.

---

[9] The Court used the interest rates published on https://www.michigan.gov/taxes/rep-legal/legal-folder/interest-rates-for-money-judgments. The formula for each six-month period from April 27, 2017 to February 7, 2022, using the published interest rates is: (damages amount x interest rate)/365 x days for accrual period = interest amount. The interest amounts for each period were then added together.

[10] These calculations do not include the amount of prejudgment interest that accrued between January 1, 2022 and February 7, 2022 as the interest rate has not yet been published by the Michigan State Treasurer. Regardless, the total prejudgment interest amount (penalty interest and Section 600.6013 interest combined) remains the same.

## CONCLUSION

The Court originally bifurcated this case into two phases. The first phase addressed a series of coverage issues, and the Court concluded that AISLIC's duty to defend was triggered with the Record Companies' Counter-claim. During the second phase, the Court addressed damages issues and found that Amway is entitled to reimbursement from AISLIC for the total settlement and defense costs since the date of the Counter-claim, totaling $23,576,382.41.[11]

Now, the Court finds that Amway is entitled to a total of $13,347,462.18 in prejudgment interest, including penalty interest under M.C.L. § 500.2006 and statutory prejudgment interest under M.C.L. § 600.6013. Specifically, Amway is awarded $4,281,410.96 in interest on the settlement, with $916,531.80 of the interest amount being awarded under Section 600.6013. Amway is also entitled to $9,066,051.12 in interest on the defense costs, with $1,940,793.28 of the interest being awarded under Section 600.6013. Finally, Amway is entitled to post-judgment interest as prescribed under 28 U.S.C. § 1961, running from February 7, 2022 to the date the judgment is satisfied.

At this time, the Court does not enter a Final Judgment. The parties shall file not later than June 24, 2022, a joint proposed Final Judgment or separate versions with briefing explaining parties' positions.

**IT IS SO ORDERED.**

Dated:  June 8, 2022           /s/ Robert J. Jonker
                               ROBERT J. JONKER
                               CHIEF UNITED STATES DISTRICT JUDGE

---

[11] The Court adjusts the total reimbursement amount for settlement and defense costs to account for the $500,000 retention.